# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1904.

### Scott *v*. The State.

*Indictment for Murder.*

1. *Murder; sufficiency of indictment.*—An indictment which avers that the defendant "did unlawfully and with malice aforethought, kill John Scully by administering to him a quantity of morphine," is sufficient as charging murder, and is not subject to demurrer.

2. *Pleading and practice in criminal case; evidence of deceased's death admissible before proof of corpus delicti.*—On a trial under an indictment for murder, it is not objectionable practice for the court to allow evidence of the death of the deceased, and the means by which it was accomplished, to be introduced before any evidence is offered tending to identify the defendant as the guilty agent; and it is no valid objection to the introduction of such testimony that the *corpus delicti* had not been proved.

3. *Homicide; admissibility of expert testimony.*—On a trial under an indictment for murder which charges the defendant with having poisoned the deceased, where it is shown that there was a chemical analysis made of the deceased's stomach and other organs of his body, and it is further shown that the analysis was made by a chemist who had had long experience both by practice and by reason of teaching, that he was a toxicologist, and therefore acquainted with poisons and their effects, the testimony of such chemist as to the effect of poisons on the human system, and as tending to show that the deceased's death was caused by being poisoned, is admissible.

APPEAL from the City Court of Selma.

Tried before the Hon. J. W. MABRY.

The appellant in this case, Pearl Scott, was jointly indicted with Florence Leftwich, Clay Hillman and Wil-

liam Briggs, for the murder of John Scully. The defendant, William Briggs, demanded a severance, which was granted, and Pearl Scott, Florence Leftwich and Clay Hillman were jointly tried. Upon the trial, the jury rendered a verdict of "not guilty" as to Florence Leftwich and Clay Hillman. Pearl Scott, the appellant, was convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for twelve years.

The indictment under which the appellant was tried and convicted, charged that she and her co-defendants "did unlawfully and with malice aforethought, kill John Scully, alias Jack Scully, by administering to him a quantity of morphine." The defendant demurred to the indictment upon the following grounds: 1st. It fails to allege that the morphine was a poison. 2d. It fails to allege facts showing that the death of the deceased resulted from the morphine alleged to have been administered. 3d. It fails to show what quantity of morphine is alleged to have been administered to deceased. 4th. It fails to allege that sufficient quantity of morphine was administered to produce death. 5th. It fails to show how the morphine was administered, or in what particular quantity. 6th. It fails to allege that the morphine was administered with intent to kill, or was such as was calculated to destroy human life. This demurrer was overruled, and defendant duly excepted.

On the trial of the case, the State introduced as its first witness, the undertaker, who testified that he was present at the autopsy held over the body of John Scully; that as the result of this autopsy, the stomach and its contents, a lung, a piece of the liver, and other organs of the body of John Scully were packed in a box, and shipped to B. B. Ross, the State Chemist, at Auburn, Ala.; that the box and its contents were delivered to the agent of the express company in Selma.

The next witness introduced by the State was the agent of the express company, who testified to having received and shipped to B. B. Ross, at Auburn, Ala., the box referred to by the former witness, containing portions of the body of John Scully.

The State then introduced as its next witness, B. B. Ross, who testified that he was a chemist, and had been engaged as a chemist for about twenty years; that he was Professor of Chemistry at the Auburn Polytechnic Institute at Auburn, Ala., and was by virtue of such position, State Chemist, and had been such for ten years or more. This witness also testified to having had varied experience in chemistry, and that he had had great experience in toxicology, which he taught both theoretically and practically. The witness Ross further testified to his having received from the undertaker in Selma the box containing the portions of the body of John Scully, which were sent from Selma, and that he had made an analysis of the stomach. Upon being asked what poison he found, if any, the defendant objected to the question upon the ground that the *corpus delicti* had not been established. The court overruled the objection, and the defendant duly excepted. The witness testified that he found morphine. Against a similar objection on the part of the defendant, he testified on making an analysis of the liver in which he also found morphine. In answer to the several questions propounded to him, this witness testified to having found a quantity of morphine by his analysis of the stomach and its contents; that in order to produce death, the morphine had to be absorbed, and that the quantity of the morphine which he found by his analysis was surplusage, or that much more than was necessary to kill the person; that from what had been disclosed to him, he was of the opinion that the person's death was due to morphine. The defendant separately and several objected to each of the questions evoking such testimony on the part of the witness Ross, upon the grounds that the *corpus delicti* had not been proved that the witness was not shown to have been qualified to give such testimony as a physician, or as a druggist, that he was not a pathologist, and that he was not shown to be an expert in reference to poisons. The court separately and severally overruled each of these objections, and to each of such rulings the defendant separately excepted.

There was evidence introduced on the part of the

State tending to show that on the night said John Scully died, he was at the house of the defendant, under the influence of whiskey; that while there the defendant handed him a glass or mug of beer, and that in a few minutes after drinking the beer, the said Sculley sank to the floor, became unconscious, and about an hour or two thereafter died.

It is unnecessary to set out all the evidence in detail. The defendant, Pearl Scott, requested the court to give to the jury the following written charge, and separately excepted to the court's refusal to give the same as asked: "The court charges the jury that if they believe the evidence, they will find the defendant, Pearl Scott, not guilty."

CHAMBLISS KEITH, for appellant.—The indictment was not sufficient to charge murder, and was fatally defective in that it failed to describe the manner or means by which the deceased came to his death. The demurrer thereto should have been sustained.—*Westmoreland v. United States,* 155 U. S. 542; *Bilansky v. State,* 3 Minn. 410; *Brunson v. State,* 124 Ala. 392; *Anthony v. State,* 29 Ala. 27; *Mitchell v. State,* 58 417; *Johnson v. State,* 17 Ala. 618; *Clarissa v. State,* 11 Ala. 60.

The testimony of the witness Ross should have been excluded. There was not enough shown to render it competent.—*Winslow v. State,* 76 Ala. 48; *Page v. State,* 61 Ala. 16; *Birmingham Ry. & Electric Co. v. Butler,* 135 Ala. 388; *Wilkinson v. Mosely,* 30 Ala. 562; *Bostwick v. State,* 94 Ala. 49; *Woolner et al v. Lehman et al,* 85 Ala. 274.

MASSEY WILSON, Attorney-General for the State:— The indictment was sufficient. It follows the form prescribed so far as possible, and the concluding averment is unobjectionable.—*Redd v. The State,* 68 Ala. 492, 1st h. n. 496; *Wilson v. The State,* 84 Ala. 426; *Duncan v. The State,* 88 Ala. 31; Code Sec. 4923, p. 333, Form No. 63.

The objection that Dr. Ross was incompetent to testi-

fy, or that he did not qualify himself, is without merit. He was shown to be the State Chemist, and to have had 20 years experience as a chemist. He also showed himself to be competent to testify as to poisons and their effects. All of his testimony was admissible.—*Duncan v. The State,* 88 Ala. 31; *Simon v. The State,* 108 Ala. 27.

McCLELLAN, C. J.—The indictment is as nearly analogous to the form prescribed in respect of averring the means by which the homicide was effected as may be, and is, therefore, sufficient.—Code, §4923, form 63, p. 333. The averment is that the defendant "did unlawfully and with malice aforethought kill John Scully by administering to him a quantity of morphine." It was not necessary to aver how the drug was administered, or the particular way in which it affected him, nor that the drug was a poison or the quantity which was administered. The administration of a quantity of morphine is shown by this averment to have been the means employed to kill, and that is all that is required. An indictment in essentially the same language has passed unchallenged through this court.—*Duncan v. State,* 88 Ala. 31. See *Redd v. State,* 68 Ala. 492, 496. The case of *Shackleford v. State,* 79 Ala. 26, is not in point here as will appear by reference to the cases of *State v. Clarissa,* 11 Ala. 57, and *Anthony v. State,* 29 Ala. 27, upon the authority of which *Shackleford's* case was decided.

It is frequently impracticable in murder trials, and is never necessary, for the State at one and the same time and by one and the same witness to prove, or adduce evidence tending to show, the death, the cause or means of the death and the connection of the defendant with the death of the person alleged to have been killed. It is quite usual, and a practice wholly unobjectionable, for evidence of the death and the means of it to be received before any evidence is offered tending to identify the defendant as the guilty agent. Of course, in such cases, if no evidence is brought out after proof of death, tending to connect the defendant with the act which

caused the death, the evidence of death and its means should be excluded on defendant's motion as being matters of no legal concern to him; but the court does not err in receiving such evidence in the first instance, and its lodgment in the case is given permanency by subsequently adduced evidence tending to show that the defendant caused the death by the means indicated by the previously received evidence. There was, therefore, no merit in the objections of the defendant to the testimony of Dr. Ross which were based on the ground that the *corpus delicti* had not been proved.

The testimony of this witness tended to show that the death of Scully was caused by morphine poison. Other witnesses, afterwards examined, testified to facts upon which it was open to the jury to find that the defendant administered this poison to Scully with homicidal intent. The court, therefore, did not err in refusing to give the affirmative charge for the defendant.

It was shown that Dr. Ross was a chemist by education, profession and long practice, by occupation, the professor of chemistry in the Alabama Polytechnic Institute and, by virture thereof, State Chemist. It appeared further that he was a texicologist of long experience, by which is necessarily implied that he was acquainted with poisons and their effects and antidotes, and the effects of excessive doses of medicines. There is nothing in his testimony which was not properly received either to show that he was an expert in respect of overdoses of medicines, poisons, etc., and the effect of poisons on the human system, etc., or as tending to show that Scully's death was caused by morphine taken into his stomach, or that the morphine had hastened his death from the primal cause of pneumonia, and this though he was not a "druggist" nor a pathologist. There is no merit in any of the objections to the testimony of this witness.

Affirmed.