282 So.2d 327

**Danny COBB**

**v.**

**STATE.**

**I Div. 335.**

Court of Criminal Appeals of Alabama.

Aug. 28, 1973.

David L. Barnett, Mobile, for appellant.

William J. Baxley, Atty. Gen., and H. Thomas Armstrong, Sp. Asst. Atty. Gen., for the State.

TYSON, Judge.

The Grand Jury of Mobile County, Alabama, indicted appellant for murder in the first degree. The Jury's verdict found him guilty of murder in the second degree, and judgment set punishment at twenty years imprisonment in the State penitentiary.

Wilbert Jones died of a gunshot wound on the morning of August 5, 1971, at the Mobile General Hospital. The evidence showed that August 4, 1971, the night of the shooting, the deceased was at the Star Service Station where he was employed. At the time of the shooting, about 10:00 p. m., the deceased was not on duty at the station. The appellant, Danny Cobb, along with two friends, Michael Clark and Royal Kennedy, walked to the service station to get a drink of water from a fountain locat-

ed outside the station. Lee Miles, a fellow employee of the deceased, testified that an argument erupted between the deceased and the "two other guys," Clark and Kennedy. Miles testified that the deceased said nothing to Cobb at this time. Miles stated that he was busy servicing cars, and that at some point Cobb and the deceased walked around to the side of the station, that the next time he looked up, the deceased was sitting down and Cobb was standing about two feet away from the deceased. The witness testified that he had a clear view of both Cobb and the deceased. Miles then stated that Cobb pointed a pistol close to the deceased's face and "clicked it three times," that he then looked away while serving a car, and approximately thirty seconds later he heard a shot. Miles then looked and saw the deceased getting up from the ground and saw Cobb standing across the street near an ice cream parlor. Cobb looked back at Jones, the deceased, and then ran. The other two individuals, Clark and Miles, remained at the station. Miles testified that he had never known the deceased to carry a knife and that during the incident in question, he never saw the deceased with a knife.

Michael Clark testified that at the time of the shooting, the deceased did not have a knife in his hand; that the deceased did not push Cobb; that Cobb walked away from the deceased; and the deceased, Jones, jumped up from where he was seated and threatened to kill Cobb. He also stated that Cobb's exit from the station was not blocked by the deceased. Clark testified that when the deceased jumped up, Cobb turned, pulled a pistol from beneath his shirt and shot the deceased once.

Both Clark and Royal Kennedy testified that when they arrived at the station, the deceased had a knife, but that subsequently he put the knife back in his pocket; that when Cobb and the deceased went around to the side of the station, the deceased, Jones, still had the knife in his pocket.

The appellant, Danny Cobb, testified that when he, Clark, and Kennedy, arrived at the station, the deceased shoved Clark and told them they could not get any water. The appellant testified that when he walked away from the deceased, Jones, at the side of the station, the deceased told the appellant he was going to kill him, then pulled a knife from his pocket. The appellant testified that he shot the deceased, who fell, then got up and again threatened to kill the appellant; and that appellant ran from the scene.

The next morning the appellant went with his father to the bus station and boarded a bus bound for Chicago, Illinois. He stated that he had been thinking of living in Chicago and attending school there, and that he was afraid Jones, the deceased, would kill him in retaliation for shooting him. The appellant's bus trip was cut short when he was apprehended in Selma, Alabama.

William Coleman, a police detective for the City of Prichard, Alabama, testified that he investigated the shooting incident in question, and that a search of the area revealed neither a knife nor pistol.

Dr. Michael D. Prosteri testified that on August 4, 1971, he was on duty at Mobile General Hospital; that he examined the deceased in one of the emergency rooms at approximately 10:20 p. m.; and that he assisted in the operation on the deceased. Dr. Prosteri stated that the cause of death was due to an "extenuation secondary to a gunshot wound to the aorta, and secondary to the bullet wound that pierced it."

I

The appellant contends that the allowance of Dr. Michael Prosteri's testimony regarding the cause of death of the deceased was reversible error. This contention is structured on the grounds that the witness, Dr. Prosteri, was not qualified as an expert in that he was not licensed to

practice medicine in Alabama, and that he did not perform surgery on the deceased.

The general rule is that an expert witness' competence to testify is an inquiry substantially within the discretion of the trial judge. This Court on appeal will not disturb the trial judge's finding of expert qualifications vel non, unless there is a clear abuse of this discretion. King v. State, 266 Ala. 232, 95 So.2d 816 (1957).

Whether a witness can be covered with the expert veil depends on his acquired knowledge in a field of endeavor not ventured into by the layman. If that knowledge extends beyond or supersedes that of an ordinary witness, as determined by the trial judge, the witness can become an expert. In instances where testimony relating to cause of death is offered, the Alabama cases show that the testimony need not be given by a physician. By way of example, such persons can testify as to cause of death as a funeral director of twenty-five years experience, Cauley v. State, 33 Ala.App. 557, 36 So.2d 347, cert. den. 251 Ala. 163, 36 So.2d 354; a licensed embalmer and undertaker, Levert v. State, 34 Ala.App. 523, 42 So.2d 525, reversed 252 Ala. 308, 42 So.2d 532, cert. den. 252 Ala. 659, 42 So.2d 534; a chemistry professor, Scott v. State, 141 Ala. 1, 37 So. 357; an employee of the State Toxicologist's Department who was not a physician, Maund v. State, 254 Ala. 452, 48 So.2d 553; an undertaker and county coroner of many years experience, Williams v. State, 255 Ala. 229, 51 So.2d 250; a mortician, Thomas v. State, 249 Ala. 358, 31 So.2d 71; county coroner with background of two years of college and one year working under the employ of a pathologist, King v. State, supra, or a deputy county coroner with the requisite training and experience, Thigpen v. State, 50 Ala.App. 176, 277 So. 2d 922; Willingham v. State, 50 Ala.App. 363, 279 So.2d 534, Snow v. State, 50 Ala. App. 381, 279 So.2d 552.

It is shown by these cases that the mere fact that a witness is not a physician does not preclude his testimony as to cause of death. However, the fact that the witness is a coroner, mortician, professor, or toxicologist does not per se qualify him as an expert on causes of death. Phillips v. State, 248 Ala. 510, 28 So.2d 542. Rather, in these professions, the witness must be competent as shown by circumstances extrinsic to the fact of his profession, and not because of it. Such circumstances are the length of time the witness has been engaged in his profession, and the number of similar causes of death situations with which the witness has had experience. This simply indicates the rule that there is no presumption that a witness is competent to express an opinion.

But the Alabama law provides an exception to this rule when physicians offer their testimony as to cause of death. In Wilson v. State, 243 Ala. 1, 8 So.2d 422, the Alabama Supreme Court held that a graduate of an accredited school of medicine and engaged as an interne was qualified to answer this question: "In your opinion, from what you have observed, what caused his death?" This witness' answer was allowed as within the sound discretion of the trial court, even though the witness was not licensed by any state to practice medicine.

In the instant case, the record establishes that Dr. Prosteri was a graduate from an accredited school of medicine, had served his internship in New Orleans, Louisiana, and at the date of the occurrence in question was serving as a resident specializing in surgery at Mobile General Hospital.

The record is silent as to the question of whether Dr. Prosteri was licensed to practice in any state, but *Wilson*, supra, suggests that licensing is not the final arbiter of the admissibility of medical testimony.

It follows from *Wilson* that it is the degree from an accredited medical school, and not licensing by the state which inculcates the witness with the necessary learning, knowledge, and skill, to enable him to express an opinion.

The record shows that on August 4, 1971, Dr. Prosteri was on duty in the hospital and examined the deceased when he was admitted. Dr. Prosteri further testified that he was third assistant during the entire three to four hour operation and was with the deceased when he died. There is no requirement in Alabama law that the testifying physician must be the "head surgeon" of the team which performed the operation. Our holding that the testimony is admissible in no wise means that Dr. Prosteri was or was not the witness best qualified to express an opinion as to cause of death. Opinion evidence is not restricted to the testimony of the person best qualified to give the opinion. The trial court having determined the witness' competence, the weight to be given his testimony was for the jury. Clark v. United States, 293 F. 301 (5 Cir. 1923).

## II

Appellant's counsel cites us to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and contends that the answer of the district attorney in the case at bar, denying that there was either an oral or written statement made by the appellant, constitutes the knowing suppression of evidence, and as such constitutes a denial of due process of law.

From the Record:

"Q When they stopped you in Selma, and the police did stop you in Selma, didn't they?

"A Yes, sir.

"Q Got you off the bus there in Selma, didn't they, Danny?

"A Yes, sir.

"Q Did they ask you what your name was there in Selma?

"A Yes, sir.

"Q You didn't tell them it was Danny Cobb, did you?

"A No.

"Q What did you tell them your name was?

"A Theodore—

"Q Pardon me—I still didn't understand you.

"A Theodore Fantin (phonetical).

"Q Theodore Fantin?

"A Yes, sir.

"Q That's what you told them your name was?

"MR. LOVELESS: Now, I'll have to object and ask that the Jury be retired from the courtroom. I have a matter to bring to Your Honor's attention.

"THE COURT: All right, sir.

"(Whereupon, the Jury was removed into the Jury Room, and the following occurred outside the presence and hearing of the Jury:)

"MR. LOVELESS: I realize that Your Honor had this case assigned to him the other day. It was originally on Judge Hodnett's docket. Going back through the file you will find motions to produce by this defendant of any oral or written statements that have been given to law enforcement officers, and also for a toxicologist report pertaining to the crime, which has been promised to me at the preliminary hearing.

"In response to this motion, the District Attorney of this County, filed in writing an answer in which he stated, 'Comes now the State of Alabama, by and through Charles R. Butler, District Attorney for the Thirteenth Judicial Circuit of Alabama, and for answer to Defendant's motion to produce alleges that there are no written statements nor were any oral statements given by the Defendant, nor is there any Toxocologist report pertaining to a crime for which the Defendant is charged.'

"He has just asked him about oral statement. Now, this is willful suppression of evidence by the District Attorney of this state, after in writing filing in court that there were no such statements. I move that the charges be dismissed for the suppression of evidence by the District Attorney, the Defendant is charged.

"THE COURT: Deny your motion.

"MR. LOVELESS: We except."

 In reviewing the above, it should be first borne in mind that the giving of a false name to the police at the time of arrest by the accused is a circumstance which may be properly weighed by the jury, along with other evidence at trial, as indicating a consciousness of guilt, Seals v. State, 271 Ala. 142, 122 So.2d 513, or to show a wish or desire to escape detention, Douglas v. State, 42 Ala.App. 314, 163 So. 2d 477, cert. den. 276 Ala. 703, 163 So.2d 496. Moreover, since the party had not been arrested or taken into custody, or was not being interrogated within the meaning of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, the giving of a false name is a volunteered act which would allow such to be admitted into evidence. Ison v. State, 281 Ala. 189, 200 So.2d 511. See also Bedingfield v. State, 47 Ala.App. 677, 260 So.2d 408.

Because of the holdings of our courts, as above set forth, we do not equate the giving of a false name, which bears on the issue of identity, with the giving of an inculpatory statement covering details of the offense charged as being one and the same. While we find no case directly in point, we do not believe that the district attorney willfully suppressed evidence favorable to the accused by not advising prior to trial that the accused had given a false name at the time of his arrest in replying to the motions filed by the defense counsel.

We have carefully considered this record, as required by Title 15, Section 389, Code of Alabama 1940, and finding no error therein, the judgment is due to be and the same is hereby

Affirmed.

All the Judges concur.