The appellant was indicted and convicted for assault with intent to ravish. The trial judge sentenced him to twenty years imprisonment.
On Sunday morning, January 23, 1977, Minor Sims, an employee of Partlow State Hospital, saw the appellant, also an employee, lying on top of a patient on the floor of the recreation room in the hospital. Sims observed the appellant through a crack between the door and the wall for two or three seconds. The appellant's pants were down around his knees and the appellant was "moving his hips on top of her" and "poking" her in the side with his fist. Sims could not see if the appellant was actually having intercourse.
Sims attempted to open the door but his key would not fit in the lock because the appellant had placed his key in the lock from inside the room. The appellant then got up, pulled up his pants and opened the door for Sims. The patient went to the back of the recreation room where some other female patients were.
Sims got a cigarette from the appellant but did not mention to him what he had seen. He returned to his "group" and told two aides of the incident. Sims testified that he did not smell alcohol or notice any symptoms or signs of intoxication exhibited by the appellant at this time.
Around noon on the following Thursday, Sims talked with the appellant at the canteen for fifteen or twenty minutes. The appellant stated that he had been accused of having sex with the patients, and said that there "was a possibility that he did do it because he was drunk that morning when he came in".
Larry Ingram was an investigator for the Department of Mental Health at Partlow in January of 1977. He investigated the incident and took two statements from the appellant. In these statements, the appellant denied any sexual activity with any of the patients and denied that this particular incident occurred. In both statements the appellant stated that he had been out the night before and was sleepy so he took five patients in the recreation room to get some sleep. While he had his head down on a desk, two men from the laundry came into the recreation room through an outside door to get the dirty laundry.
While riding back to Partlow from the Tuscaloosa City Police Department, the appellant told Ingram that he had been out drinking and was still pretty intoxicated when he came to work that Sunday morning. The appellant stated that he had a hangover and was still intoxicated from the night before and that it "was possible that it could have happened, but he didn't know whether or not it did happen".
Before this testimony was allowed before the jury, voir dire was conducted in which testimony was adduced that the appellant voluntarily rode with Ingram to take a polygraph test at the Tuscaloosa Police Department; that before he was given the test, he was advised of his constitutional rights and that the appellant said that he had been told that he had "flunked" the test. When the appellant made the statement to Ingram he was not under arrest and they were having a general conversation about the incident.
During this time Burns Brown was the laundry manager at Partlow. He testified that Luke Lavochie, identified in the defendant's statements as a laundryman he saw that morning, was not at work Sunday and that there was no laundry service on the weekends.
Rick Hardy was a psychiatrist at Partlow who had worked extensively and almost daily with the victim for a substantial period of time. He described her degree of mental retardation and mental illness. According to his testimony, the victim is mentally ill and very afraid of people. She does everything under her power to insure that people stay away from her and cannot form *Page 732 
any kind of close personal relationship with anyone.
 "If you try to come up to her and shake her hand, she'll try to get away as quickly as possible. One of the things that we found out is that she could perform certain acts, academic skills. We would simply come up to her and put our hand on her and say `. . ., if you will give us your age or give us your `ABC's' or count to twenty, we'll take our hand from you'. Or even having — when we take her down to the dining room and if she's having problems eating, we can come up to her and we'll say that we'll walk away from you if you eat faster. This tells us that she is afraid of people, and she does everything to insure that people stay away from her."
The patient's mental age is four or five although chronologically she is in her early twenties.
At trial, the patient was not called as a witness but was displayed before the jury "in the nature of an item of evidence", "merely as an exhibit". Defense counsel objected and the court would not permit the patient to testify.
The appellant did not testify and presented no evidence in his defense.
 I
During closing argument the state objected to comments made by defense counsel regarding evidence and testimony which the state had not produced at trial: a bed sheet and two eyewitnesses.
 "MR. SOGOL (Defense Counsel): And Mr. Ingram asked him in these statements while he was questioning him, told him about a sheet and there were two eyewitnesses, and we haven't seen these things brought into court.
 "MR. SMITH (Deputy District Attorney): We object to this, your Honor.
"MR. SOGOL: They don't have any physical evidence.
"MR. SMITH: Judge.
 "THE COURT: Alright, Mr. Smith, I'll sustain your objection to that."
The appellant alleges that the action of the trial court constituted an improper limitation upon his right to argue reasonable inferences from the evidence. He contends that the argument was proper in view of statements made in a transcript of the interrogation of the appellant by Investigator Ingram. Although the transcript was admitted into evidence, it was not copied into the record on appeal nor certified to this court. Therefore, assuming that the transcript does contain statements by Investigator Ingram that "two eyewitnesses say they saw you (appellant) do it" and that there was a sheet on the floor which would reveal if the incident took place, we will address the merits of the argument.
This court firmly and tenaciously adheres to the principles set forth in Roberts v. State, Ala.Cr.App., 346 So.2d 473, cert. denied, Ala., 346 So.2d 478 (1977) concerning the liberal rules to be allowed counsel in drawing inferences from the evidence in their arguments to the jury. However, counsel for the accused may not comment on the state's failure to produce certain articles in evidence which it is not incumbent on the state to produce. In Roberts v. State, 122 Ala. 47, 25 So. 238
(1899) the Alabama Supreme Court held that in a prosecution for rape in which the prosecutrix testified that the undergarment worn by her at the time of the offense had blood on the front and back of it, that the trial court properly disallowed defense counsel to comment upon the state's failure to produce the garment as evidence in the case because it was not incumbent upon the state to produce such clothing. Here also the trial court properly disallowed defense counsel from commenting upon the absence of evidence which was not necessary for the state to produce.
Additionally we note that at trial there was no evidence presented to the jury regarding any sheet or eyewitnesses other than the one who testified. This additional "evidence" appeared solely in a transcript and was heard by the jury for the first time in the closing argument of defense counsel. While Investigator Ingram was cross examined *Page 733 
by defense counsel he was not questioned about the existence of any sheet or other eyewitnesses.
 II
A witness for the state was permitted to testify over objection that the victim would not be able to understand or appreciate the nature of a sexual act. The appellant argues that the witness was not qualified to give an opinion on this subject.
Rick Hardy testified that he was a unit psychiatrist at Partlow State School and Hospital, that he had been there approximately three and one-half years, that he had a Master's Degree in General Experimental Psychology and three years toward a Ph.D. He was "involved in program development for the residents who are classified as being either severely profound or moderate mental retarded". He testified that "we" initially evaluated the victim and that she came back under his supervision about a year ago; that he has seen and worked extensively with her during that time on approximately a daily basis. Hardy stated that he was familiar with her condition and nature, had made a "behavioral assessment" of her conduct and had observed and analyzed her conduct on the ward. He testified that her mental age was four or five years old.
The criterion for the admission of expert testimony is that the witness, by study, practice, experience or observation as to the particular subject should have acquired a knowledge beyond that of ordinary witnesses. White v. State, 294 Ala. 265, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373,46 L.Ed.2d 288 (1975). An "expert witness" is one who can enlighten a jury more than the average man in the street. Woodsv. State, 54 Ala. App. 591, 310 So.2d 891 (1975). A witness can be qualified as an expert if his knowledge extends beyond or supercedes that of an ordinary witness. Cobb v. State,50 Ala. App. 707, 282 So.2d 327 (1973); Nesbitt v. State,55 Ala. App. 534, 317 So.2d 501, cert. denied, 294 Ala. 766,317 So.2d 504 (1975). An "expert witness" is one who is shown, either by training or experience, to be better informed than the hypothetical average juror. Ward v. State, 44 Ala. App. 229,206 So.2d 897, cert. denied, 281 Ala. 650, 206 So.2d 922
(1966). An expert witness, by definition, is any person whose opportunity or means of knowledge in a specialized art or science is to some degree better than that found in the average juror or witness. Frazier v. State, 40 Ala. App. 67,112 So.2d 212, cert. denied, 269 Ala. 696, 112 So.2d 218 (1959).
It is the opinion of this court that the experience of the state's witness alone in observing the victim on a daily basis would qualify him to testify as to whether she would be able to understand the nature of a sexual act. Not only had the witness observed the victim's conduct but he had observed her mental condition and worked with her. The trial court properly permitted the expert to testify over the objection of defense counsel.
 III
In sentencing the appellant the trial court remarked:
 "And the only reason I am giving you twenty years (the maximum sentence allowed by statute) is I can't give you any more. This is one of the worse things I have heard of."
The appellant urges this court to consider the trial court's statements.
We have reflected upon these remarks very carefully and find that, under the circumstances, they exhibit a remarkable degree of restraint on behalf of the trial judge. The crime committed is not only vile in its very essence but sordid and loathsome because of the particular circumstances. The execution by the appellant of his lustful desires upon the mind and body of one so weak bespeaks a characteristic utterly shocking and repulsive to this court.
We have read the entire record as required by law and found no error prejudicial to the substantial rights of the appellant. The judgment of the trial court is therefore due to be
AFFIRMED.
All Judges concur. *Page 734