BASCHAB, Presiding Judge,
concurring specially.
Because this court is bound by the decisions of the Alabama Supreme Court, I am compelled to concur. However, I would *340 note that, by allowing Payne to testify, the trial court found, at least implicitly, that he was a qualified and competent firearms expert. Therefore, a remand for findings on the issue is a waste of already scarce judicial resources.

On Return to Second Remand

KELLUM, Judge.
In 1986, Anthony Ray Hinton was convicted of two counts of murder made capital because the murders were committed during the course of a robbery. By a vote of 10-2, the jury recommended that Hinton be sentenced to death, and the trial court accepted the jury’s recommendation and sentenced Hinton to death. Both this Court and the Alabama Supreme Court affirmed Hinton’s convictions and death sentence, Hinton v. State, 548 So.2d 547 (Ala.Crim.App.1988), aff'd, 548 So.2d 562 (Ala.1989), and the United States Supreme Court denied certiorari review. Hinton v. Alabama, 493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989). A thorough statement of the facts is set out in this Court’s opinion affirming Hinton’s convictions and sentence.
Hinton subsequently filed a timely petition for postconviction relief pursuant Rule 32, Ala. R.Crim. P., challenging his convictions and sentence of death. After conducting an evidentiary hearing, the circuit court denied Hinton’s petition in a written order. This Court affirmed that denial on appeal. Hinton v. State, 172 So.3d 249 (Ala.Crim.App.2006).
The Alabama Supreme Court granted certiorari review as to one issue: Whether Hinton’s trial counsel was ineffective for not procuring a qualified firearms-identification expert to testify in Hinton’s defense. The Court held that it was premature to address the issue because no specific finding of fact had been made by the circuit court, as required by Rule 32.9, Ala. R.Crim. P., as to whether Andrew Payne, whom trial counsel had procured in Hinton’s defense, was, in fact, qualified as an expert in firearms identification. Ex parte Hinton, 172 So.3d 332 (Ala.2008). The Court quoted then Judge Shaw’s[1] dissent to this Court’s opinion affirming the circuit court’s denial of Hinton’s Rule 32 petition, in pertinent part, as follows:
“ ‘After carefully reviewing the briefs and after examining both the record on direct appeal and the Rule 32 record, I am satisfied that there is only one issue that has been properly raised and that merits this Court’s intervention — whether, based on the standard set out in Strickland v. Washington, 466 U.S. 668 (1984), Hinton’s trial counsel rendered ineffective assistance by retaining and proceeding to trial with an unqualified firearms witness.
[[Image here]]
“ ‘... I feel that it is premature to reverse the circuit court’s judgment because it does not appear to me, after examining the record on direct appeal and the Rule 32 record, that a specific finding as to whether Andrew Payne was a qualified firearms and toolmarks expert has ever been made.... Payne testified that he was a civil engineer with a military background primarily in heavy weapons and ordnance and that he had had limited experience during his career in toolmarks examination of handguns. To say that Payne was soundly discredited at trial on cross-examination by the prosecutor would be an understatement. However, prosecutors successfully challenge the credibili *341 ty of even qualified expert defense witnesses in many cases and for many reasons. Therefore, to me it is not dis-positive that the prosecutor successfully challenged Payne’s credibility before the jury. Rather, the dispositive issue is whether Payne was a qualified firearms and toolmarks expert.
“ ‘... [T]he trial court never specifically found Payne to be qualified to testify about toolmarks. Likewise, the record of the Rule 32 proceedings also reflects that the circuit court made no specific findings on this question....
[[Image here]]
“ ‘..'. The circuit court did not address directly the issue whether Payne was qualified to be testifying in the first place. Additionally, although the circuit court noted in passing that Payne had “been qualified as an expert ballistics witness for several criminal and civil cases in Alabama,” that statement does not necessarily reflect a finding that Payne was qualified to testify as a tool-marks expert in this case....
[[Image here]]
“ ‘If Payne was in fact a qualified firearms and toolmarks expert, even if his qualifications did not necessarily match up with those possessed by the State’s experts, then I would affirm the circuit court’s judgment denying Rule 32 relief. Sorting out conflicting testimony from qualified experts presented at trial is solely within the province of the jury. Rule 32 is not a mechanism by which those convicted of criminal offenses may argue many years after trial that they now have found better expert witnesses that a newly selected jury should hear. On the other hand, if Payne was not qualified to testify authoritatively as a firearms and toolmarks expert, then, based on the Strickland v. Washington standard, I would have no choice but to reverse the circuit court’s judgment denying Rule 32 relief on the ground that trial counsel had rendered ineffective assistance to Hinton. It goes without saying that, with knowledge that sufficient funds were available to have a qualified firearms and toolmarks expert, no reasonable criminal defense lawyer would seek out and hire an unqualified firearms witness. Such a lawyer would be charged with the knowledge that in a situation where that witness’s testimony was crucial to the pivotal issue in the case, the witness would be subjected to a withering cross-examination that could ultimately result in the complete impeachment of his or her credibility. In addition, based on the evidence presented at trial, if the testimony or the only physical evidence that connected Hinton to the capital murders was, in fact, presented by a witness who was not competent to render an opinion, then it was useless to him in rebutting the opinions of the State’s experts, thereby resulting in prejudice under the Strickland v. Washington standard.’ ”
Ex parte Hinton, 172 So.3d at 335-36 (quoting Hinton v. State, 172 So.3d 249, 328-31 (Ala.Crim.App.2006) (Shaw, J., dissenting) (footnote omitted)). The Supreme Court then reversed this Court’s judgment and remanded the case for this Court to remand the case “for the trial court to enter an order pursuant to Rule 32.9, Ala. R.Crim. P., making specific findings as to whether Andrew Payne was indeed qualified and competent to testify as a firearms-identification expert based on his knowledge, skill, experience, training, or education.” Ex parte Hinton, 172 So.3d at 337.
On December 19, 2008, this Court remanded this case to the circuit court for proceedings consistent with the Alabama *342 Supreme Court’s opinion. Hinton v. State, 172 So.3d 338 (Ala.Crim.App.2008) (opinion after remand from the Alabama Supreme Court). The circuit court then conducted a hearing and issued a written order purporting to comply with • the Supreme Court’s opinion and submitted its return to remand. This Court permitted the parties to file briefs on return to remand. After carefully examining the parties’ briefs, the proceedings on remand, and the circuit court’s order on remand, this Court concluded that the circuit court had failed to comply with the Alabama Supreme Court’s opinion. Instead of “making specific findings as to whether Andrew Payne was indeed qualified and competent to testify as a firearms-identification expert based on his knowledge, skill, experience, training, or education,” Ex parte Hinton, 172 So.3d at 337, the circuit court appeared to disagree with the Supreme Court’s conclusion that no finding had been made regarding whether Payne was qualified as an expert in firearms identification and issued a written order quoting various portions of the transcript from Hinton’s trial and the transcript from the evidentiary hearing on Hinton’s Rule 32 petition and concluding that the original trial judge who had presided over Hinton’s trial and the initial Rule 32 proceedings had, indeed, found Payne to be a qualified expert, albeit implicitly.[2] The circuit court made no independent findings of fact regarding whether Payne was qualified as an expert in firearms identification.
Thereafter, this Court remanded this case a second time by order for the circuit court to comply with the Supreme Court’s opinion and to make specific findings as to whether Payne was qualified to testify as a firearms-identification expert. On second remand, the circuit court complied with the Supreme Court’s opinion and issued a written order finding that Payne was, in fact, a qualified expert in firearms identification and submitted its return to second remand. In its order on return to second remand, the circuit court made the following findings:
“The court makes the following findings of fact from the trial testimony:
“1) During his service in the Air Force Mr. Payne was an instructor in the gunnery program and worked on ‘development research of guns’ (RDA. 1573);
“2) Throughout his 30 year career with the Air Force, Mr. Payne was involved with the design of gun barrels (R-DA. 1574-75);
“3) During his Air Force Career Mr. Payne was involved with the testing of firearms and bullets on a daily basis (R-DA. 1575);
“4) During his Air Force career he examined bullets fired from machine guns and examined bullets fired from handguns on a regular basis (R-DA. 1576);
“5) During the 1950’s he served on the weapons evaluation board of the Air Force and examined fired bullets approximately 6000 times (R-DA. 1576);
“6) He worked at the Pentagon as the ‘technical assistant to the deputy chief of staff for research and technology1 which included research and design of all weapons, non nuclear (R-DA. 1577);
*343 “7) He was a member of the American Academy of Forensic Sciences through which he received all publications of the criminalistics branch which included firearms identification (R-DA. 1578-79,1642^3);
“8) Throughout his career he learned how ‘barrels and bullets put toolmarks on one another’ (R-DA. 1577);
“9) Prior to his examination of Hinton’s gun he had viewed bullets under a comparison microscope ‘thousands’ of times (R-DA. 1601);
“10) Throughout his career he spent much of his time matching ammunition back to a particular gun barrel. Even more specifically Payne had spent six to nine months of his career involved 100 per cent of the time ‘specifically matching a projectile to a barrel’ (R-DA. 1641 — 42); and
“11) Payne had previously been qualified as an expert witness in both civil and criminal courts in Jefferson County. (R-DA. 1577; 1654-55).
“Therefore, based on the ... law, which was in effect at the time of Mr. Hinton’s trial[3] and the findings of fact from that trial this Court finds and therefore rules that Mr. Andrew Payne was an expert witness when he testified during said trial in September 1986 due to the fact that he clearly had more experience and knowledge in the area of firearms and toolmarks comparisons than that of the average lay witness or juror.”
(Record on Return to Second Remand “RTR2”, C. 5-6.)[4] This Court then allowed the parties to file supplemental briefs on return to second remand.
“ ‘[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court’s review in a Rule 32 proceeding is de novo.’ Ex parte White, 792 So.2d 1097, 1098 (Ala.2001). ‘However, where there are disputed facts in a postconviction proceeding and the circuit court resolves those disputed facts, “[t]he standard of review on appeal ... is whether the trial judge abused his discretion when he denied the petition.” ’ Boyd v. State, 913 So.2d 1113, 1122 (Ala.Crim.App.2003) (quoting Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992)).”
Bryant v. State, [Ms. CR-08-0405, February 4, 2011] — So.3d —, — (Ala.Crim.App.2011).
On appeal, Hinton first contends that the circuit court, on second remand, again failed to comply with the Alabama Supreme Court’s instructions because, he says, the circuit court did no more than list Payne’s experience and then “summarily eonclude[]” that he was an expert “because he knew more about firearms than the average lay person.” (Hinton’s supplemental brief on return to second remand, (“RTR2 brief’), at p. 23.) However, we conclude that the circuit court’s order on second remand complies with the Alabama Supreme Court’s instructions to “mak[e] specific findings as to whether Andrew Payne was indeed qualified and competent to testify as a firearms-identification expert based on his knowledge, skill, experience, training, or education.” Ex parte *344 Hinton, 172 So.3d at 337. The circuit court thoroughly examined Payne’s testimony regarding his military career and, from that testimony, determined that Payne had the necessary knowledge, skill, and experience to qualify him as an expert in firearms identification. In addition, as explained below, the circuit court applied the proper standard — the standard in effect at the time of Hinton’s trial — in making its determination, i.e., whether Payne had acquired knowledge of firearms and toolmarks examination beyond that of an average layperson.
Hinton also contends on appeal that the circuit court failed to address in its findings the evidence he presented at the Rule 32 hearing from his firearms-identification experts, from the State’s firearms-identification experts, and from his trial counsel, regarding Payne’s alleged lack of qualifications in firearms and tool-marks examination. However, contrary to Hinton’s contention, the opinion of other witnesses as to whether Payne was qualified as a firearms-identification expert is irrelevant. “ “Whether a witness is sufficiently qualified to testify as an expert is a question for the trial court....’” Arthur v. State, 711 So.2d 1031, 1064 (Ala.Crim.App.1996), aff'd, 711 So.2d 1097 (Ala.1997) (quoting Bailey v. State, 574 So.2d 1001, 1003 (Ala.Crim.App.1990)). As explained below, whether a witness is qualified as an expert is based on the witness’s knowledge, skill, experience, training, or education, and not on another person’s opinion of the witness’s qualifications.
Finally, Hinton contends that the circuit court erred in finding that Payne was qualified as a firearms-identification expert. He argues that Payne’s own testimony, as well as then Judge Shaw’s dissent and then Judge Cobb’s dissent to this Court’s original opinion affirming the denial of Hinton’s Rule 32 petition, shows that Payne’s expertise was in heavy ordnance and artillery, and not in firearms identification, and that Payne had only limited experience “matching bullets to a barrel” and “no experience comparing a bullet recovered from a crime scene to a handgun for forensic identification purposes.” (Hinton’s RTR2 brief, at p. 33.) He also argues that Payne’s lack of qualifications is evidenced by Payne’s alleged incompetent examination of the bullets at issue in this case. According to Hinton, Payne used “outdated and inappropriate equipment,” dropped a bullet, did not know how to use the comparison microscope provided to him at the Alabama Department of Forensic Sciences’ (“DFS”) laboratory, and failed to test-fire the weapon at issue which, Hinton claims, is an “absolutely essential” step in firearms identification. (Hinton’s RTR2 brief, at pp. 35-36.)[5]
Hinton’s arguments are unpersuasive. Moreover, the circuit court’s findings are supported by the record. At Hinton’s trial, Payne testified that he was a consulting engineer and that he had received a civil-engineering degree from Tulane University in 1933. Payne testified that he had joined the United States Air Force in the 1940s and that he was on active duty for four years as an instructor in the gunnery program. After leaving active duty, Payne *345 continued employment with the Air Force in reserve status, first serving as “supervisor and chief engineer of the flexible gunnery engineering division,” which included working on bombs and fuses and ensuring that “the guns that the Air [Force] used were kept state of the art.” (DA, R. 1573.) Also during his service, Payne worked in research and development of non-nuclear weapons, served as director of the technical-services laboratory, served as director of the armament-development laboratory, was on a “weapons evaluation board” for the Air Force (DA, R. 1576), and at one point was “technical assistant to the deputy chief of staff for research and technology” for “all weapons, non-nuclear.” (DA, R. 1577.)
Payne testified that, during his entire time with the Air Force, he was involved with the design of gun barrels and that he tested and examined firearms and bullets fired from guns “almost on a daily basis.” (R. 1575.) According to Payne, he spent the majority of his career dealing with heavy ordnance and examining bullets from such weapons as machine guns, but that “in the 1950’s,” when he was on the weapons-evaluation board, he examined “all the weapons which were in the arsenal of the Air Force,” including handguns. (DA, R. 1576.) Payne stated that he had examined bullets five or six thousand times in his career, and that he had used a comparison microscope to compare bullets thousands of times. He also stated that he had examined and compared bullets to weapons barrels to determine which weapon they had come from and that he had, in fact, spent 100 percent of his time for approximately nine months of his career doing nothing but examining bullets in an effort to match them to weapons.[6]
Payne also testified extensively regarding his familiarity with toolmarks on bullets and how they are placed there, with the manufacturing process of gun barrels and the rifling characteristics left on the barrels as a result of that process, and with the corrosive effect of various types of primers used in bullets on the rifling characteristics of gun barrels. He also thoroughly explained to the jury, using actual bullets and slides of actual bullets, how to make comparisons of bullets based on their toolmarks and how such comparisons can be impacted by deformities in the bullet. Payne further said that he had previously been qualified in court as an expert in firearms identification.
At the time of Hinton’s trial, “[t]he criterion for admission of expert testimony [was] that the witness, by study, practice, experience or observation as to the particular subject, [had] acquired knowledge beyond that of an ordinary witness.” Meáde v. State, 390 So.2d 685, 693 (Ala.Crim.App.1980). “Whether a witness can be covered with the expert veil depends on his acquired knowledge in a field of endeavor not ventured into by the layman. If that knowledge extends beyond or supersedes that of an ordinary witness, as determined by the trial judge, the witness can become an expert.” Cobb v. State, 50 Ala.App. 707, 710, 282 So.2d 327, 329 (Ala.Crim.App.1973). As explained in Charles v. State, 350 So.2d 730 (Ala.Crim.App.1977):
“An ‘expert witness’ is one who can enlighten a jury more than the average *346 man in the street. Woods v. State, 54 Ala.App. 591, 310 So.2d 891 (1975). A witness can be qualified as an expert if his knowledge extends beyond or super-cedes that of an ordinary witness. Cobb v. State, 50 Ala.App. 707, 282 So.2d 327 (1973); Nesbitt v. State, 55 Ala.App. 534, 317 So.2d 501, cert. denied, 294 Ala. 766, 317 So.2d 504 (1975). An ‘expert witness’ is one who is shown, either by training or experience, to be better informed than the hypothetical average juror. Ward v. State, 44 Ala.App. 229, 206 So.2d 897 [(Ala.1966)], cert. denied, 281 Ala. 650, 206 So.2d 922 (196[7]). An expert witness, by definition, is any person whose opportunity or means of knowledge in a specialized art or science is to some degree better than that found in the average juror or witness. Frazier v. State, 40 Ala.App. 67, 112 So.2d 212, cert. denied, 269 Ala. 696, 112 So.2d 218 (1959).”
350 So.2d at 733.
In this case, it is evident from Payne’s testimony that he had acquired knowledge in the field of firearms identification beyond that of an ordinary witness or juror. Although he had not spent his- entire career engaged in firearms identification, as did the State’s expert witnesses, Payne clearly possessed knowledge of gun barrels, rifling characteristics, and toolmarks beyond that of an average layperson. He had extensive experience in examining bullets using a comparison microscope, having done so thousands - of times. Payne also gained specific experience during his career with examining bullets and matching them to certain weapons. Contrary to Hinton’s contention, merely because Payne had never before compared “a bullet recovered from a crime scene” to a weapon in no way renders Payne unqualified to do so. (Hinton’s RTR2 brief, at p. 33.) Indeed, Hinton has cited no authority, and we have found none, that requires a witness to have previously worked on a criminal case in order to be qualified as a firearms-identification expert in a criminal case.
In addition, although Hinton alleges that Payne’s examination of the bullets in this case was incompetent, we do not find that Payne’s actions during his examination rendered him unqualified as an expert. Hinton is correct that when Payne came to the DFS laboratory, he brought with him calipers, a magnifying glass, and a scale, all traditionally old-school instruments. However, Payne testified that he used those instruments to measure and weigh the bullets. He used the comparison microscope provided by DFS to perform the microscopic examination of the bullets, from which he came to his conclusion that the bullets from the crimes were not fired from the gun recovered from Hinton’s mother. Additionally, Hinton is also correct that Payne did not test-fire the gun at issue during his examination. Rather, Payne used something much more damning to the Staté’s case to reach his conclusion — the State’s own test-fired bullets. Furthermore, although it is clear from the record that Payne required assistance in using the comparison microscope at the DFS laboratory, Payne specifically testified that he had never used that particular brand — American Optical — of comparison microscopes. As this Court noted in its original opinion affirming the circuit court’s denial of Hinton’s Rule 32 petition, even one of the State’s own firearms-identification experts testified during his deposition for the Rule 32 proceedings that such assistance would be necessary, stating that “on the scope we had at that time, unless you were familiar with that model, you would need someone familiar with it to show you.” (R32, C. 2210; emphasis added.) Finally, the fact that Payne dropped a bullet while at the DFS laboratory in no way affects his qualifications as an expert. -
*347 After reviewing the record, we cannot say that the circuit court abused its discretion in finding that Payne was qualified as an expert in firearms identification. As the Alabama Supreme Court noted in quoting then Judge Shaw’s dissent to this Court’s original opinion affirming the circuit court’s denial of Hinton’s Rule 32 petition:
“ ‘If Payne was in fact a qualified firearms and toolmarks expert, even if his qualifications did not necessarily match up with those possessed by the State’s experts, then I would affirm the circuit court’s judgment denying Rule 32 relief. Sorting out conflicting testimony from qualified experts presented at trial is solely within the province of the jury. Rule 32 is not a mechanism by which those convicted of criminal offenses may argue many years after trial that they now have found better expert witnesses that a newly selected jury should hear....’”
Ex parte Hinton, 172 So.3d at 335 (quoting Hinton v. State, 172 So.3d 249, 331 (Ala. Crim.App.2006) (Shaw, J., dissenting)). Because Payne was a qualified expert in firearms identification, even if his qualifications did not match those of the State’s experts, Hinton’s claim that his trial counsel was ineffective for not procuring a qualified firearms-identification expert is meritless and his Rule 32 petition was properly denied on this ground by the circuit court.[7]
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WELCH, P.J., and WINDOM, BURKE, and JOINER, JJ., concur.

. Judge Shaw is now an Associate Justice on the Alabama Supreme Court.

. The circuit judge who presided over Hinton's trial also conducted the initial evidentia-ry .hearing on Hinton's Rule 32 petition and issued the initial written order denying Hinton's petition. However, that judge retired while Hinton’s case was on appeal and a different circuit judge inherited the case on remand.

. Rule 1103, Ala. R. Evid., provides, in relevant part, that "these rules shall apply if the proceeding begins on or after January 1, 1996.” Because Hinton’s trial occurred some 10 years before the Alabama Rules of Evidence became effective, those rules are inapplicable here.

. References to the record on return to second remand will be to "RTR2,” references to the record from Hinton's initial Rule 32 proceedings will be to "R32,” and references to the record from Hinton’s direct appeal will be to “DA.”

. Hinton also appears to argue that because the State discredited Payne at trial and then "exploited” Payne’s lack of credibility, he could not have been an expert. (Hinton's RTR2 brief, at p. 41.) However, as the Supreme Court noted in Ex parte Hinton:
" '[Pjrosecutors successfully challenge the credibility of even qualified expert defense witnesses in many cases and for many reasons. Therefore, ... it is not dispositive that the prosecutor successfully challenged Payne’s credibility before the jury.’ ’’
172 So.3d at 335 (quoting Hinton v. State, 172 So.3d 249, 329 (Ala.Crim.App.2006) (Shaw, J., dissenting)).

. Because Payne had, in fact, examined and compared bullets and/or ordnance fragments to barrels to determine which weapon they had come from, this case is materially distinguishable from Bowden v. State, 610 So.2d 1256, 1258 (Ala.Crim.App.1992), on which Hinton relies, in which this Court found no abuse of discretion on the part of the trial court in refusing to allow a defense witness to testify as an expert in firearms identification where the witness had never before "compared a shell of unknown origin with any particular weapon.”

. We note that in Wilson v. Greene, 155 F.3d 396 (4th Cir.1998), the United States Court of Appeals for the Fourth Circuit examined whether a criminal defendant was entitled to the effective assistance of a mental-health expert and recognized that no such constitutional right exists. The Court explained:
"The Constitution does not entitle a criminal defendant to the effective assistance of an expert witness. To entertain such claims would immerse federal judges in an endless battle of the experts to determine whether a particular psychiatric examination was appropriate. See Harris v. Vasquez, 949 F.2d 1497, 1518 (9th Cir.1990); Silagy v. Peters, 905 F.2d 986, 1013 (7th Cir.1990). Furthermore, it would undermine the finality of state criminal convictions, which would constantly be subject to psychiatric reappraisal years after the trial had ended. Harris, 949 F.2d at 1517-18; Silagy, 905 F.2d at 1013."
155 F.3d at 401. This Court has followed the rationale of Wilson in differing circumstances involving mental-health experts. See Burgess v. State, 962 So.2d 272 (Ala.Crim.App.2005) (upholding circuit court’s denial of postcon-viction petitioner’s request for funds to hire a mental-health expert where petitioner had three such experts at his original trial and there was no evidence that the standards in Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), had not been met), and Nicks v. State, 783 So.2d 895 (Ala.Crim.App.1999) (upholding denial of claim in postcon-viction petition that petitioner had been denied due process under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), where petitioner had three mental-health experts at trial). Likewise, at least four of our sister states have followed the rationale of Wilson regarding mental-health experts. See Walls v. State, 926 So.2d 1156 (Fla.2006); State v. Leonard, 157 Ohio App.3d 653, 813 N.E.2d 50 (2004); Brown v. State, 798 So.2d 481 (Miss.2001); and Turpin v. Bennett, 270 Ga. 584, 513 S.E.2d 478 (1999). Although these cases involved only mental-health experts, by finding in Ex parte Hinton that the dispositive issue in this case is whether Payne was a qualified firearms and tool-marks examiner, the Alabama Supreme Court, at least implicitly, extended the Wilson rationale to other experts.