310 So.2d 891

**Cletus WOODS**

**v.**

**STATE.**

**8 Div. 446.**

Court of Criminal Appeals of Alabama.

Jan. 21, 1975.

Rehearing Denied April 1, 1975.

Robert Straub, Decatur, Charles E. Carmichael, Jr., Tuscumbia, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and George R. Stuart, III, Sp. Asst. Atty. Gen., Birmingham, for appellee.

CATES, Presiding Judge.

Voluntary manslaughter: sentence, ten years imprisonment.

This appeal was not taken *in forma pauperis*. Rule A of this Court, 48 Ala.App. XXI, literally requires that appellant's brief be returned to him if there is no list of adverse rulings.

Under Code 1940, T. 15, § 389, we are required to search the record for error. This mandate existed long before Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, and Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. Under this § 389 we "must consider all questions apparent on the record [c.f. 15, § 383—writ of error] or reserved by bill of exceptions [now transcript of evidence] * * *."

"Reserved" would seem to mean kept, held, retained or preserved. See Myers v. Conway & Co., 90 Ala. 109, 7 So.

639. "Reserved" in this statute we hold to mean that a point is raised by protecting the record in that the party appealing properly sought and obtained from the trial court an adverse ruling. Unlike procedure in the English Court for Consideration Crown Cases Reserved, our statute in effect certifies the questions for appellate decision rather than making the certification a matter for the trial judge's discretion. In pari materia, with § 389, supra, we must construe T. 15, § 365, which (along with § 367) is the basis for all appeals from criminal convictions. This section reads as follows:

"Any question of law arising in any of the proceedings in a criminal case, tried in the circuit court, may be reserved by the defendant, but not by the state, except as otherwise provided in this chapter, for the consideration of the supreme court or court of appeals; and if the question does not distinctly appear on the record, it must be reserved by bill of exceptions, duly taken and signed by the presiding judge, as in civil cases; but it is not necessary to reserve an exception to the giving or refusal of a special charge asked in writing, nor to the ruling of the court upon a demurrer to an indictment or other pleading, nor to any ruling or action of the court which is required to appear of record; but in every such case an exception is presumed on appeal. All written charges in the transcript shall be presumed to have been asked of the court before the jury retired, unless shown to the contrary by notation of the trial judge on the refused charges."

The first clause through the phrase "as in civil cases"—except for the interpolation of the Court of Appeals—has appeared virtually verbatim in our permanent statutes

since the Penal Code of 1866 (§ 751). The 1866 Penal Code, § 763, also contains the source of T. 15, § 389. See also, § 4314 of the Code of 1867.

However, the last sentence of § 389, viz: "But the judgment of conviction must not be reversed * * *, when the court is satisfied that no injury resulted therefrom to the defendant." first appears in § 4333 of the Code of 1897.[1]

In Robinson v. State, 46 Ala. 9, we find:

"No brief or memorandum has been furnished to this court, pointing out or calling our attention to any particular error in the record.

"In such a case, no assignment of errors is necessary. It is made the duty of this court to examine the record, and render such judgment on the record as the law demands. Revised Code, § 4314.

"We think, however, the accused should furnish the court with a brief, or in some way call the attention of the court to the supposed error or errors in the record. It would save us much trouble, in otherwise having to examine the record, without any aid, to see whether any error or errors were committed in the proceedings to the injury of the accused."

However, Hunter v. State, 48 Ala. 272, says:

"In this case, no question of law has been reserved by the defendant, either by demurrer, bill of exceptions, or otherwise, and there is no assignment of errors. There was no argument, nor has any brief been furnished to the court. In such a case, *it is not the duty of this court to hunt or fish after errors.* * * *" (Italics added).

---

1. Formerly a taint of error infected the entire case. Ex parte Knight, 61 Ala. 482; Taylor v. State, 48 Ala. 157. But as above shown, since 1897 some form of a harmless error rule applied to criminal appeals. This even though Supreme Court Rule 45 was not adopted until 1913, 175 Ala. XXI. Apparently, the liberality of the statutes of jeofails and amendments were considered curative enough for civil cases. See Foster v. State, 39 Ala. 229.

In this context we have scanned the entire record proper and the transcript of evidence, together with the exhibits sent up. Also, we have considered the arguments advanced by the parties.

As a background we shall sketch the gist of the State's case. The deceased was Billy Corsbie who lived in a stationary mobile home at Corsbie's Hill, almost at the Mississippi line. Corsbie seems to have engaged in bootlegging with a black and white clientele drawn from (at least on Sunday) neighboring Mississippi, as well as the parched reaches of our shire of Colbert.

On the Sunday of the instant tragedy Woods had spent the night before at Corsbie's abode. The two, according to Deborah, the thirteen year old daughter of the deceased, profaned the Lord's Day by drinking well into the night. During wassailing as many as eighteen men were in a back bedroom rolling dice.

The jury was told that Corsbie and Woods devised a scheme whereby they would cheat some of the others, notably blacks, at dice. They agreed to pool their winnings and losses and split equally. Apparently, Corsbie welched and was found mortally wounded.

Woods, when apprehended, inculpated himself—after *Miranda* warnings—by saying, "I meant to kill him." (R. 103). Woods admittedly was within one of the 57 varieties of intoxication. See Holley v. State, 25 Ala.App. 260, 144 So. 535.

When this problem of incremental evaluation of alcoholic influence[2] occurs in homicides the Law throws its hands skyward and leaves the judgment to its Johannes Factotum, the jury.

I

But in the consideration of a tendered confession the trial judge always has a threshold question of law, viz, whether or not the statement is legally voluntary in nature. In Anderson v. State, 45 Ala.App. 653, 235 So.2d 902; Winn v. State, 44 Ala.App. 271, 207 So.2d 138; and Ray v. State, 39 Ala.App. 257, 97 So.2d 594, we have relatively recent decisions in this area where the confessant had been drinking.

From *Anderson,* supra, we quote from the opinion per Almon, J.:

"Appellant contends that his alleged confession was inadmissible because he was intoxicated at the time it was alleged to have been made, thus rendering anything he might have said involuntary.

"Evidence was heard on the voluntariness of the alleged confession out of the presence of the jury in accordance with Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. There was ample evidence, even though conflicting, from which the trial judge could conclude that appellant was not intoxicated to the extent of mania. We conclude that the trial judge did not abuse his discretion in admitting the alleged confession for the jury's consideration. Intoxication which would affect the voluntariness of a confession is primarily a question of fact which first addresses itself to the trial judge to determine admissibility and later to be submitted to the jury for whatever consideration it may deem appropriate.

"The rule is well established in this jurisdiction that intoxication short of mania or such an impairment of the will and mind as to make the person confessing unconscious of the meaning of his words will not render a confession inadmissible. Warren v. State, 44 Ala.App. 221, 205 So.2d 916, cert. denied 281 Ala. 725, 205 So.2d 920; Ray v. State, 39 Ala.App. 257, 97 So.2d 594; Smith v. State, 25 Ala.App. 297, 145 So. 504; Eskridge v. State, 25 Ala. 30."

---

2. Dr. Spooner passed judgment on one of his New College undergraduates, "Sir, I believe you are under the affluence of incahol."

See also, Snow v. State, 50 Ala.App. 381, 279 So.2d 552; and Whitehurst v. State, 51 Ala.App. 613, 288 So.2d 152. There was no error here.[3]

## II

Citing Griffin v. State, 155 Ala. 88, 46 So. 481, appellant argues that the trial court erred (R. 138) in overruling an objection. We quote from the direct examination of Deputy Sheriff Vickery, a State witness:

"Q. Then where did you go?

"A. We left there. Our information was that Cletus had been there and had left going to Billy Corsbie's trailer.

"MR. CARMICHAEL: [defense counsel] We want to object about that information—he can tell what he found there. That would be hearsay information he received there.

\* \* \* \* \* \*

"BY THE COURT: Overruled."

We hold that whatever merit, there might have been in the posited ground of objection, it miscarried because the proper request was for an exclusion of the volunteered unresponsive answer. See Ivory v. State, 237 Ala. 344, 186 So. 460.

In Treadaway v. State, 18 Ala.App. 409, 92 So. 529, we find:

"The answer of the witness Williams, 'Yes, sir. I have seen and arrested lots of niggers right on the corner of Fifth avenue and Nineteenth street,' while illegal, was not responsive to any question asked, and, no motion having been made to exclude this answer, the point is waived."

The rule making exclusion (or striking out) discretionary when the motion comes from the party who did not pose the question which furnished the occasion for the offending answer is predicated upon the answer being otherwise admissible.

" \* \* \* if the evidence given is legal and material and objectionable only because not responsive to the question, only the party who asked the question is entitled to have it excluded. The exclusion of such evidence on motion of the other party would merely prolong the trial by requiring the examining party to propound an appropriate question to elicit the same testimony. \* \* \* " Ivory v. State, supra, 237 Ala., at 346, 186 So., at 462.

In view of Woods' confession that he killed Corsbie under all the State's evidence the deed was done at the trailer. Therefore, even if defense had moved to strike, the ruling allowing this hearsay to come into evidence was harmless. Supreme Court Rule 45.

As we read *Griffin*, supra, defense counsel there moved to exclude the volunteered hearsay. Moreover, that decision antedated the advent of Rule 45.

## III

In the second point argued by appellant another piece of hearsay came into evidence. Objection was interposed, but again the question had been answered before objection. (R. 97 and 98).

The trial court undertook to overrule the objection. Thus the question was—in substance—answered twice. The witness related a telephone conversation with appellant's son which was not heard by the defendant. Part of the conversation tended

---

3. "MR. CARMICHAEL: All right, at this time we object to any testimony that Mr. Woods would have given at that time because the witness says Mr. Woods was

intoxicated to the extent that he would have arrested him if he was out on a public street.
"BY THE COURT: Overruled."

to show the deceased was the original aggressor. The remainder, however, was inculpatory in that it related that appellant, after being beaten, came home, fetched a shotgun and went back to Corsbie's dwelling.

Since the prejudicial portion was heard by the jury before the question was objected to, its repetition later was harmless. Rule 45, supra.

## IV

The trial judge permitted a peace officer to give his opinion as to the angle from which certain pellets were fired. The pellets hit the hub cap of the defendant's truck.

As appellant argues there was some pertinency as to whether the truck was standing still or moving. And, if moving, in what direction.

We consider that the trial court did not abuse its discretion. An expert witness is one who can enlighten a jury more than the average man in the street. Here we do not analogize the instant testimony with that found in cases where the State has attempted to establish an angle of fire from the supposed path of a projectile into a human body.

We have considered the entire record; the judgment below is

Affirmed.

TYSON and DeCARLO, JJ., concur.

ALMON and HARRIS, JJ., concur in result.

## ON REHEARING

CATES, Presiding Judge.

In the next to last paragraph of the opinion the first sentence should read:

"We consider that the trial court did not abuse its *discretion.*"

As to the testimony concerning the hub cap of the defendant's truck, we note the following in appellant's brief on rehearing:

"Although the Court in its opinion referred to this witness as expert. We contend that the transcript itself amply shows that he was not an expert and did not consider himself to be.

"When asked by the Trial Judge about his qualifications and about how many cases he had investigated where shotgun pellets struck metal, he referred to one case. * * *

"When asked by counsel for appellant if he could tell whether or not an automobile was moving when being shot at the witness answered 'No, sir, not without seeing it.'

"On page 168 we find the following:

" 'MR. CARMICHAEL: I understand that, but Mr. Graham was qualifying you to be an expert and—

" 'A. Oh, no, I'm no expert, no sir.'

"Against a background of this type the witness was permitted to state as follows:

" 'A. It looked to me as if the gun was fired close to the front of the truck, like standing closer to the front of the truck at an angle to the back and down.'

" * * * Counsel for defendant objected to this and asked that the answer be stricken and was overruled by the Court.

"Thus a non-expert was permitted to testify to the very important question of the relative position of the combatants. This was a question which should have been decided by the jury from all of the facts surrounding the shooting and not from the conclusion of a witness. That this is error has been the holding in Ala-

bama from McKee v. State, 82 Ala. 32, 2 So. 451, to Padgett v. State, 49 Ala.App. 130, 269 So.2d 147, cert. den. 289 Ala. 749, 269 So.2d 154.

\* \* \* \* \* \*

" \* \* \* An examination of the record will show that no attempt was made to correlate the position of the wheel at the times indicated."

Conceding arguendo that Vickery was not shown to be an expert in how pellets bounce off hub caps, nevertheless, his testimony was so ambiguous as to be harmless:

"MR. GRAHAM CONTINUES: Now, Mr. Vickery, my question is not largely based on this picture, but what you saw on the panel of Mr. Woods' truck itself—did it appear that the pellets hit at a 90 degrees—or straight in or on the angle from right or left—the place where it actually hit the metal?

"A. It looked to me as if the gun was fired close to the front of the truck, like standing closer to the front of the truck at an angle to the back and down.

"MR. CARMICHAEL: Now we object to that, it is a conclusion, and ask that the answer be stricken from the record. He is not shown to be an expert.

"BY THE COURT: Overruled.

"MR. CARMICHAEL: We reserve an exception.

"MR. GRAHAM CONTINUES: Are these some of the photographs or pictures you took of the bullet damage that you observed on Cletus Woods' truck at the time and place you told us about?

"A. Yes, sir."

The photographs had already been introduced in evidence "by agreement." (R. 150).

Application overruled.

All the Judges concur.