A jury convicted appellant-defendant of second degree murder that was embraced in an indictment for first degree murder. The victim was Edward Anderson. The jury fixed the sentence at thirty-five years imprisonment in the penitentiary. Defendant entered a plea of not guilty and not guilty by reason of insanity. The latter plea was withdrawn during the progress of the trial.
The homicide took place during the daylight hours of December 23, 1978, at the home or residence of Ms. Peggy Shepard, 1003 Bragg Street in the city of Montgomery, Alabama.
There was a considerable amount of evidence relating to the homicide, but suffice it to say that the victim was at the Bragg Street residence the night before where and when he consumed alcoholic beverages. The defendant appeared the next day and he, too, was under the influence of alcoholic beverages. It appears that the deceased owed the defendant a small debt concerning which an argument ensued and both parties went outside in the yard where the argument became more heated. The end result was a fatal pistol wound in the back of Anderson, who died within a few minutes after receiving the wound.
Defendant contends that Anderson refused to pay the alleged debt, stooped over in the yard and came up with a small caliber pistol and during defendant's efforts to take the pistol from the hand of deceased, the gun fired and the bullet therefrom struck deceased in the back.
There was evidence that refuted this contention and from which the jury concluded that defendant was at fault and that he fired the fatal shot under such circumstances as to constitute murder in the second degree. Seemingly, it appears that the fatal shooting was the result of a disagreement relative to the payment of the alleged debt. The dispute was aggravated and intensified by alcoholic beverages previously consumed by the two participants.
We will address seriatim the several contentions of error that appellant's appointed counsel (appellant is an indigent) has incorporated in his model brief. We will allude to pertinent evidence as the same becomes advisable.
 I
Appellant asserts that the court committed reversible error in overruling his objection to a question of the state to one Lawrence Shufford, a state's witness. The ruling was to a question, among several others, that involved time element.
It appears that this witness came to the home on Bragg Street as a visitor. When he arrived he went through the living room, and met the defendant and his victim leaving to go outside. They were engaged in an *Page 10 
argument over some money. The witness proceeded to the back of the house where he remained only a couple of minutes. He then returned to the living room. He looked or glanced through the window and ". . . John Love (defendant) and Edward Anderson seemed to be passing words back and forth." He took his eyes off the window and "I started talking to the people that was (sic) in the living room and about that time I heard a shot." He then looked "back out the window." At the time he was about a foot from the window and was standing up. He saw Anderson staggering up the yard.
The witness, responding to the state's question, testified that it could not have been more than about fifteen minutes from the time he went inside the house on Bragg Street until the time he heard the shooting.
"Q Fifteen minutes?
"A At the most.
"Q Ten or fifteen minutes at the most?
"A Right, I was in the house.
 "Q Ten of fifteen minutes at the most, okay, about how much time had passed between the time you came back to the living room and glanced out the window to see them arguing and the time you heard the shot? (Emphasis added.)
 "A Couldn't have been more than a couple of minutes, three or four minutes.
 "Q Three or four minutes there, okay, and how much time would you say, if you can, existed between the time you heard the shot and the time you looked out the window?
"A Say about ten minutes or less.
 "Q Between the time you heard the shot and the time you looked out the window to see Edward Anderson staggering?
"A Right.
 "Q Okay. Let me ask you this then. You told us you heard the shot, is that correct?
"A Right.
"Q When you heard the shot, what did you do?
"A I went outside.
 "Q Well, it didn't take you any ten minutes to go outside, did it?
 "MR. POOL: Your Honor, we object to him arguing with his own witness and suggesting the answer to his question.
"COURT: The objection is overruled.
"A I didn't understand."
It will be noted from above that the witness was asked about the time that passed from the time he came back to the "living room and glanced out the window . . . the time you heard the shot." The answer was a couple of minutes, three or four minutes. Then followed the above question relating to the time that passed after he looked out the window and the time he heard the shot.
It appears that the witness did not understand the question and was somewhat confused. He cleared up his answer when he testified that after he heard the shot he went right outside. In view of the confusion and the clarifying answer, we will not put the court in error for its ruling.
 II
Appellant asserts that the court erred in its ruling as follows:
"Q Did you hear the gun shot?
 "A Yes, I thought it was a fire cracker by it being so close to Christmas and Lawrence (Shepard) said he done shot Bootie (the victim). (Parenthesis added.)
 "MR. POOL: We object to that, Your Honor, we object to that and ask that it be excluded, what some third party said.
 "COURT: I believe that comes under the exception to hearsay rule, objection overruled."
It appears in the record that at this time the foregoing ruling was made, Lawrence (Shepard) had already testified as a state's witness. This testimony, both direct and cross, indicated that the homicide was not the result of an accident as defendant contended in his testimony; also that defendant had shot "Bootie." In the light of Lawrence's testimony, we do not think the ruling was injurious to defendant. We are unwilling to reverse even if the ruling was error, as it was harmless. Rule 45, ARAP. *Page 11 
 III
It appears that defendant gave two statements to officers relative to the shooting. Both statements were inculpatory. It appears that the first statement was made to Detective Carmichael at defendant's home where and when he was arrested. The second statement was given to a detective sometime later at the jail. It appears that the defendant was placed in the "drunk tank" after he entered the jail. There was substantial evidence that he, the defendant, although under the influence of alcoholic beverages when he talked to Officer Carmichael, was not so drunk that he did not know his rights and what he was saying. We quote from the record as follows:
 "A Yes, another officer, I guess, he called him on the little walkie talkie and he come around and he told him, said, have you read him his rights and he said, no, and he pulled out the card or something and went to reading the rights then after I was handcuffed.
 "Q Alright and on this occasion you didn't make any statements to him?
"A I didn't make no statement, not to him.
 "Q Alright, now, did you all leave the house to go somewhere?
 "A We left the house went and got in the car and before we got outside the yard, I mean the driveway, he asked me what happened. I told him, I said, I don't even have a lawyer yet, I said, you ask me what happened. He said, I was just curious about it, I was trying to find out what went on."
The trial court, hearing the evidence in camera, concluded that defendant was not so drunk that he was not aware of what he was saying. The record indicates that defendant was mildly intoxicated at the time.
Mary Hardy, who escorted defendant to the "drunk tank" testified that defendant did not seem drunk to her. Defendant testified "I was not drunk. . . ."; we will not disturb the ruling of the court that admitted the inculpatory statement.Woods v. State, 54 Ala. App. 591, 310 So.2d 891.
 IV
Contentions here made that since the first confession, supra, was unconstitutional, the second confession was the fruit of the first confession. But this argument must fail because we are holding that the first confession was not unconstitutional.
 V
Appellant also complains that the homicide weapon, a pistol, was illegally seized, absent a search warrant, and was therefore not admissible in evidence over his appropriate objection.
It appears that Officer Carmichael had probable cause to believe that appellant-defendant had committed an unlawful homicide as here charged and went to defendant's residence and effected an arrest in the presence of another officer. Both officers took defendant to jail where he was imprisoned for the instant homicide.
Before leaving the residence, Officer Carmichael asked defendant where was the homicide weapon. The officer, a witness for the state, testified that defendant told him that the gun was inside the house on the refrigerator. Carmichael said on cross-examination that it could have been defendant's daughter who made the statement. However, Carmichael clung to his testimony on direct that it was the defendant who gave him the information.
While the information furnished by defendant was not specific or direct consent to seize the gun, as was done without a search warrant, at least defendant supplied the information that led to the seizure of the gun and furnished probable cause to the officer as to the location of the weapon. The gun was wrapped in a cover and was on top of the refrigerator as the officer was informed.
Absent direct or specific consent to make the seizure, we still think Officer Carmichael was lawfully authorized to make the seizure. He was confronted with *Page 12 
an exigent situation. If he left the weapon there to make disposition of his prisoner and also to obtain a search warrant, the weapon might have been surreptitiously removed while he was gone. We think the officer acted with proper and lawful judgment in seizing the weapon and preserving it for evidence. Defendant's objection to the introduction of the weapon as evidence because of its seizure without a search warrant was free of error. Golden v. State, 361 So.2d 1128
(Ala.Cr.App.), cert. denied, 361 So.2d 1132 (Ala.).
 VI
As we view appellant's brief, he contends in the above assignment of error that he was not advised of his Miranda
rights before the officers interrogated him about the location of the homicide weapon.
 "Q Sir, I show you what has been marked for identification as State's Exhibit No. 8, please identify it to the Court?
"A This is my rights card.
 "Q Is that the rights card you used to advise John Love of his constitutional rights?
"A It is.
 "Q Please state to the court the rights you so advised him of?
 "MR. POOL: Judge, we'll stipulate that it says what it says since it's been marked.
"COURT: Alright, Gentlemen.
 "Q Now, after you advised him of his rights on the Crystal Road location what, if anything, did you do?
"A I asked him where the gun was?
"Q Okay, and what, if anything, did he say?
"A He told me it was on the refrigerator.
 "Q Did you have an occasion to take into custody the gun at that time?
"A Yes, I did.
 "Q Showing you what's been marked as State's Exhibit No. 5 and I'll ask you to examine that, please, Sir?
 "A There was also a white rag that this was wrapped up in.
 "Q Okay, but is that the weapon you took into custody?
"A Yes, Sir."
We think the record clearly shows that before defendant was asked about the location of the gun, he was fully advised about his constitutional rights under Miranda. The foregoing contention of error is devoid of merit.
 VII
It appears in the record that Detective Williams was asked about the record of defendant and the deceased for carrying a gun and discharging the same. There were no objections by either side to this line of interrogation and no ruling of the court was invoked. In the absence of a court ruling as here there is nothing for this court to review. Slinker v. State, Ala.Cr.App., 344 So.2d 1264.
The judgment of the court is due to be affirmed. It is so ordered.
The foregoing opinion was prepared by the Honorable BOWEN W. SIMMONS, a retired Circuit Judge, serving as a Judge of this Court, under the provisions of § 6.10, of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.