Appellant was put to trial upon an indictment which, omitting the formal parts, reads as follows:
 "The Grand Jury of said county charge that before the finding of this indictment Reginald Meade, whose name is otherwise unknown to the Grand Jury than as stated, did on, to-wit: February 2, 1979, illegally possess cocaine contrary to and in violation of the Alabama Controlled Substance Act and that said Reginald Meade has heretofore been convicted of an offense under the Alabama Controlled Substance Act on, to-wit: December 6, 1976, against the peace and dignity of the State of Alabama."
Prior to arraignment appellant was found to be indigent and counsel was appointed to represent him. At arraignment, in the presence of counsel, he waived the reading of the indictment, and pleaded not guilty.
The jury found him guilty and assessed a fifty thousand ($50,000.00) dollar fine against him and the trial judge sentenced him to twenty-two years in the penitentiary. He gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on this appeal.
There was no motion to exclude the State's evidence; there was no request for the affirmative charge; no exceptions were reserved to the oral charge of the court; but appellant filed a motion for a new trial in which he raised the sufficiency of the evidence. No evidence was presented at the hearing on the motion for a new trial and after argument of counsel the motion was overruled and denied.
The major contention made on this appeal on which error is predicated is the denial of the motion to suppress the evidence on the ground that appellant was illegally arrested. Appellant contends he filed three motions to suppress and the first motion was heard while he was in a V.A. hospital in Atlanta, Georgia. The motion was denied on May 21, 1979, by Circuit Judge Inge Johnson. Thereafter appellant through and by his attorney filed a "Motion for re-scheduling the motion for suppressing of Evidence," and alleged:
 "That the attorney for defendant has been unable to locate the defendant and that he has not ascertained information concerning the whereabouts of defendant."
Judge Inge Johnson made an order on August 1, 1979, re-scheduling the hearing on the motion to suppress the evidence for August 7, 1979, at 1:00 p.m.
Appellant's counsel participated in the hearing to suppress and did not move for a continuance because of the absence of his client. The record reflects that two continuances were had in this case before the case was set for trial on the merits. Honorable Robert M. Hill, Sr., Retired Circuit Judge from Florence, Alabama, was assigned to try the case. One continuance was granted at the request of appellant and the other continuance was made necessary by the conditions of the court docket. The case was reset for trial on September 24, 1979, before Judge Hill.
After the jury was selected, sworn and empaneled and two or more witnesses for the State had testified appellant's counsel made another motion to suppress the evidence and Judge Hill responded:
 "The Court notes for the record that the record of proceedings in this case indicate that the defendant first filed a Motion to Suppress the Evidence incident to an unlawful arrest on May 10, 1979, and after hearing the record indicates that the motion was overruled by Circuit Judge Inge Johnson. Subsequent thereto, the defendant filed a like Motion to Suppress the Evidence incident to an unlawful arrest and the same was set for a hearing on the 2nd day of August, 1979, was re-scheduled for August 7, 1979, and said Inge Johnson entered a ruling thereon on August 7, 1979, as follows; which are a part of the record . . . `It appearing to *Page 687 
the Court that the defendant's Motion to Suppress the Evidence filed June 6, 1979, raises issues identical with the Motion to Suppress filed by defendant on May 10, 1979, which motion was denied by this court by order dated May 21, 1979, it is therefore ordered that the defendant's second Motion to Suppress be and hereby is denied. Signed by Inge Johnson, Circuit Judge.'"
Nevertheless, Judge Hill permitted the defendant to testify as to the facts and circumstances under which he was arrested. We will summarize his testimony following the summarization of the testimony of the State's witnesses so that the evidence will be in proper sequence.
Deputy Sheriff Lanny Jackson of the Lauderdale County Sheriff's Department, assigned to the North Alabama Drug Unit, testified that, on February 2, 1979, he and other officers went to appellant's home at 227 Lewis Avenue in Muscle Shoals, Alabama, to serve an arrest warrant on appellant. He was accompanied by Investigator Jones of the Florence Police Department and Deputy Sheriff Ronnie May of Colbert County. They were both assigned to the North Alabama Drug Unit. When they arrived at appellant's home at about 10:00 a.m. on February 2, 1979, Deputy Jackson went to the back door and Officers Jones and May went to the front door. After some five or six minutes Officer Jones went to the back door and told Officer Jackson that he saw a man in bed but he couldn't get him to come to the door or the window. Jackson then removed a glass pane from the door and reached in and unlocked the door. He announced that he was with the Sheriff's Department and had arrest warrants and was entering the house.
Jackson further testified that he entered the house followed by Officer Jones. They opened the front door to let Officer May into the house. Officer Jackson remained in the kitchen area where he could watch the bedrooms to prevent anyone from coming out. From this vantage point he could see appellant lying in bed. He said appellant was hard to wake. While Officer Jones was trying to arouse appellant he and Officer May went through the house to make sure no other person was in the house. The bedroom up the hall from the room occupied by appellant was partly open and the officers could see a plastic bag full of green plant material which appeared to be marijuana and a set of scales on a piece of plywood on the floor in plain view. After making sure appellant was the only person in the house they stopped everything and called the District Attorney's Office to secure a search warrant to search the entire house for other contraband.
Deputy Sheriff Ronnie May left the premises and appeared before the District Judge of Colbert County to secure a search warrant. The affidavit and search warrant are as follows:
 "STATE OF ALABAMA COLBERT COUNTY
 "Personally appeared before me, Jerry M. Vanderhoef, Judge of the District Court of Colbert County, Alabama, Ronnie May, who after first being duly sworn by me and who is known to me to be a Deputy Sheriff of Colbert County, Alabama, deposes and says as follows:
 "The last term of Colbert County Grand Jury, Reginald Meade was indicted for two offenses, one being the sale of heroin; the second being the sale of cocaine. The said Reginald Meade had not been arrested on the writs following said indictments until this day. The affiant, along with two North Alabama Drug Unit officers, received information the said Reginald Meade was living at 227 Lewis Street, City of Muscle Shoals, Alabama. Upon arriving at said residence within the past two hours, and knocking upon the door there was no response, but the drape in the front window was pulled back and upon looking through the window, a person was observed lying on the bed. The back door was entered by removal of a window-pane. The person lying on the bed turned out to be the said Reginald Meade. In the other bedroom, in plain view was a trash bag filled with what appeared to be plant material and *Page 688 
known to the affiant and agents of the North Alabama Drug Unit to be marijuana. Also in plain view in a closet in the hallway next to the bedroom, where the said Reginald Meade was arrested, there was recovered by the officers certain tablets which appeared to be valium, a controlled substance. After the said Reginald Meade was arrested, he made an attempt to dispose of certain objects which were upon his person. Upon search by the North Alabama Drug Unit, these substances appeared to the said agents and the affiant to be controlled substances, to-wit: heroin and/or cocaine. Upon the deputies arriving to transport the said Reginald Meade to the Colbert County Jail, he requested that a black bag be carried with him. The said bag was opened, checked for weapons, etc., and it was found to contain a great deal of currency which at this time has not been counted, but appears to be in the thousands of dollars. Further upon the deputies' attempt to remove the said Reginald Meade to the car for transportation, he asked that he be allowed to wear a certain coat, to-wit: a green army fatigue jacket; that upon search of said jacket, it was found to have in its pockets, syringes and a small brown bottle containing a white substance, which is believed by the affiant to be a controlled substance.
 "Based upon the above information recited herein above, the affiant has probable cause for believing and does believe that there is contained in the residence of the said Reginald Meade at 227 Lewis Street, Muscle Shoals, Colbert County, Alabama, other illegal drugs, to-wit: marijuana, cocaine, heroin, amphetamines, and barbituates.
 "Upon this information and belief, I request that the magistrate to whom this affidavit is directed to make a determination if there is sufficient probable cause to issue a search warrant for the person and premises herein above described.
 "I make this affidavit for the purpose for securing a search warrant for the purpose of searching the premises of the said Reginald Meade, located at 227 Lewis Street, Muscle Shoals, Colbert County, Alabama.
 /s/ Ronnie May
Affiant
 "Subscribed to and sworn to before me this the 2 day of February, 1979.
 /s/ Jerry M. Vanderhoef
Judge of the District Court"
 "STATE OF ALABAMA COLBERT COUNTY
 "TO ANY SHERIFF, CONSTABLE OR LAWFUL OFFICER OF THE STATE OF ALABAMA:
 "Ronnie May, Deputy Sheriff of Colbert County, Alabama, having appeared before me, made the attached affidavit deposes and says that he has probable cause for believing and does believe that Reginald Meade has in his possession at this time in the premises located at 227 Lewis Street, Muscle Shoals, Colbert County, Alabama, illegal drugs, to-wit: marijuana, cocaine, amphetamines, and barbituates, and it appearing further that said probable cause is based upon information seen by the affiant and from said information this magistrate has determined there is probable cause to believe a search warrant should issue and therefore you are ordered forthwith to make an immediate search of the premises of the said Reginald Meade, located at 227 Lewis Street, Muscle Shoals, Colbert County, Alabama, during the daylight hours of between 8:00 a.m. and 6:00 p.m. for said illegal drugs, to-wit: marijuana, cocaine, amphetamines, and barbituates, and if you find any part thereof, bring the same to me at my office in Tuscumbia, Alabama.
"Done this the 2 day of February, 1979.
 /s/ Jerry M. Vanderhoef
Judge of the District Court"
Deputy Sheriff Jackson further testified that after the search warrant was issued the officers searched throughout appellant's house. He stated there was a syringe on the bed occupied by appellant and appellant had some white powder wrapped in tin foil *Page 689 
and regular wrapping paper which he tried to get out of his pocket. Appellant tried to evade Officer Jones and go to the bathroom and Officer Jones had to forcibly take it away from him. The officers also found 79 ten-milligram Valium pills in the linen closet, a large plastic bag of green plant material, and other items including a set of scales and an ash tray. Photographs were taken of the entire house and the various items found. These photographs were identified by Deputy Jackson and introduced into evidence over objections that they were not germane to the charge of possessing cocaine as charged in the indictment. The objections were overruled.
On cross-examination Deputy Jackson stated that as he entered the door he told appellant they were police officers and had warrants for his arrest. He further testified they ascertained the utilities and telephone service to the house were in the appellant's name. A telephone bill in the name of appellant addressed to him was introduced into evidence as State's Exhibit 7.
All items seized pursuant to the search warrant were placed in sealed envelopes, initialed and delivered to John Kilbourn, Director of the State Laboratory, in Florence, Alabama.
Police Officer Randy Jones of the Florence Police Department testified that he went to appellant's house at 227 Lewis Avenue in Muscle Shoals, Alabama, on February 2, 1979. He stated he had received a telephone call from a confidential informant approximately an hour or an hour and a half prior to going to the address. His purpose in going was to execute two grand jury capias warrants on appellant and place him under arrest. At the time he was assigned to the North Alabama Drug Unit he ascertained the utilities to this address were in the name of the appellant. He said, "I got in touch with Officer Jackson and Deputy Ronnie May and we went over to Mr. Meade's residence around 10:00 a.m. that morning."
He further testified that, "Deputy Jackson went to the back or rear of the house and Ronnie May and myself went to the front door and knocked on the door several different times, both of us. And we shouted we were police officers, identified ourselves as police officers for approximately four minutes. As a matter of fact, we made so much noise that one of the neighbors came over to see what was going on. The front door, the storm screen door was locked and I walked to the left of the front door and looked in the window, the curtains were pulled back and I saw the defendant, Reginald Meade, lying on the bed in the front bedroom." He stated he knew who he was at the time. Being unable to get a response from knocking and shouting he went to the rear and told Deputy May and Deputy Jackson that appellant was in the house, lying on the bed, and he appeared to be passed out or asleep. Deputy Jackson took a rear pane out of the back door and reached inside and unlocked the door.
He and Deputy Jackson went into the house and directly to the bedroom where appellant was in the bed. He stated he woke appellant after some thirty seconds of vigorously pulling and pushing him and calling his name; that Deputy May presented appellant with two grand jury indictments; and Officer Jones placed him under arrest and gave him the Miranda rights and warnings. At this time Officer Jones had seen the plant material. The officers called the District Attorney and secured the scene.
From the record:
 "We were standing by for you (District Attorney) to arrive on the scene and right before you got there, I believe Mr. Meade made a statement that he wanted to go to the restroom. And I said he would just have to wait until we got the scene secured. He stood there for a minute . . . he was laying or sitting on the bed and he jumped up and tried to run out of the room and I grabbed him and threw him back on the bed. As I did, a plastic packet fell out of his pocket onto the bed and I recovered that."
Officer Jones further stated that he gathered all the other evidence including about thirteen pounds of plant material; a plastic *Page 690 
bag of white gray powder which was identified by the State Toxicologist as 7.2822 grams of cocaine, seventy-nine blue tablets; a piece of folded aluminum foil containing plant material and two hand rolled cigarettes; three four inch long sticks wrapped with plant material; one syringe filled with liquid; scales; an assortment of drug paraphernalia; and a small glass vial containing a trace of some powder. Officer May also found a leather purse containing $5,667.00 in cash but the court sustained appellant's objection to the introduction of the money. By order of the court this money was returned to appellant.
Officer Jones concluded his testimony by saying in his opinion appellant was incoherent and was under the influence of drugs at the time he was arrested. He testified there was a plastic syringe lying next to appellant and there were tracks of blood coming out of his left arm.
The Clerk of the Circuit Court of Colbert County, Ms. Sarah Blackwell, produced a certified copy of a judgment entry, case no. 11751, styled State of Alabama v. Reginald T. Meade, in which Meade was charged and convicted of violating the Alabama Uniform Controlled Substances Act. The conviction was based on a guilty plea and he was sentenced to a term of two years in the penitentiary. The certified copy of the judgment entry was introduced into evidence over a general objection. Ms. Blackwell stated that Meade was the identical person then on trial as she had previously seen him in court on other occasions. This certified judgment of conviction justified the fine assessed by the jury and the sentence imposed by the court.
Mr. John Kilbourn, Director of the Department of Forensic Sciences Laboratory in Florence, Alabama, testified as to his education and experience. His qualifications as an expert were not questioned. He received a B.S. degree in Pharmacy and Pharmacology from Auburn University and did graduate work in the field of pharmacology and toxicology while in Auburn. He also attended the University of Alabama and did graduate work at the University of North Alabama and was an instructor at that university. He attended numerous schools and seminars throughout the United States "dealing in the forensic sciences, dealing with drug identification, microanalysis utilizing the microscope and also death investigation." During his ten year employment with the State he had performed several thousand drug identifications.
He further testified that, on February 6, 1979, he received several items from Officer Jones pertaining to the Meade case for identification but because of an abundant caseload at the Florence Laboratory some of the items were sent by U.S. mail to the main laboratory at Auburn, Alabama, for analysis and identification. Kilbourn retained the plastic bags containing plant material, three or four long sticks wrapped in plant material, and two hand rolled cigarette butts, which he analyzed and determined to contain marijuana. These items were sealed in manila envelopes with the officer's initials across the seal and bearing the name of appellant.
The items sent by mail to Mr. Taylor Noggle at the Auburn, Alabama, laboratory were two plastic bags which contained a white powder. This was in an envelope sealed with evidence tape, dated 2-2-79, with the initials "RSJ" across the seal, bearing the name Reginald Meade. The envelope contained a plastic bag sealed with evidence tape which contained a syringe with liquid.
Mr. Taylor Noggle, who was employed with the Alabama Department of Forensic Sciences at the main laboratory in Auburn, Alabama, for approximately eight years, testified he received a Bachelor of Science Degree in Chemistry from Georgia Southern College in Statesboro, Georgia, and a Master's Degree from Auburn University in Montgomery. At the time he testified in this case he was enrolled in the graduate school in Toxicology, Pharmacology and Pharmacy at Auburn University pursuing a Master's Degree. He had two years training with the United States Army Criminal Investigation laboratory at Fort Gordon, Georgia, where he spent six months on the *Page 691 
job training program approved by the Provost Marshal General. He served two years with the United States Army Criminal Investigation Laboratory where he specialized in the examination and identification of dangerous drugs and narcotics. After completion of his tour of service in the Army he went to work for the Alabama Department of Forensic Sciences at Auburn and has been continuously employed since that time. He further stated that during his Army career and employment with the State of Alabama he has made several thousand drug identifications.
He said he received certain items through the United States Mail from Mr. John Kilbourn who placed his return address on the envelopes. In his own words:
 "I received several sealed manila envelopes which contained assorted items. One of the sealed manila envelopes which I received contained a matchbox which held one blue circular tablet with Roche 10 Valium printed on one side. Another sealed manila envelope contained a clear plastic bag which held 78 blue circular tablets, each of which had Roche 10 Valium printed on one side and a single score on the other. I received another sealed manila envelope which contained a clear plastic bag holding a plastic syringe which contained seven-tenths milliliter of a liquid. I also received a sealed manila envelope which contained a clear plastic bag, which held a piece of wrapping paper and within this wrapping paper was a white powder."
Mr. Noggle further testified that he conducted an analysis on the 79 tablets and found they contained diazepan which is a controlled substance. He conducted a laboratory analysis on the liquid found in the syringe and found it contained cocaine which, too, is a controlled substance. He put the white powder in a bottle because it was leaking out of the plastic bag and was scattered about in the piece of aluminum foil and the gray wrapping paper. He weighed the powder before putting it in the bottle and it weighed 7.2822 grams. The laboratory analysis of the powder revealed the presence of cocaine.
Mr. Noggle further testified that cocaine injected along with other drugs would be capable of rendering a person unconscious and that a sufficient dose of cocaine alone would have the same effect. He stated that cocaine is a stimulant drug which stimulates the central nervous system and gives a feeling of being awake or alert, but a sufficiently high dose causes the central nervous system to become over-stimulated and unconsciousness can be the result.
Appellant called Officer Randy Jones who testified that the two arrest warrants were approximately two months old. He was asked if appellant was trying to dodge him and he replied, "Let's just say I couldn't locate him."
Appellant testified in his behalf. On direct examination he testified that he was convicted of an offense in September, 1974. He was convicted of another offense in May and was fined $2,500.00 and sentenced to eleven years in the penitentiary.
He stated that, on February 2, 1979, he heard someone come to his back door but he did not hear anyone say anything. He said the next thing he realized one of the officers came into his room and said, "You are under arrest" and put handcuffs on him; that the other two officers started moving around the house opening doors. He denied hearing anyone say "we are police officers and are here to arrest you." He said when he heard the noise coming in the door the person came to him and asked him if he was Reginald Meade and asked him if he had any identification. He showed him his I.D. He denied being under the influence of drugs.
He admitted that some time around 10:00 or 10:15 on the morning he was arrested someone knocked on his door and a short time later an individual came to his window, but he did not go to the door. He stated if he had known they were police officers he would have opened the door.
On cross-examination he was asked the names of the officers who came in his house and he said he did not know them at that *Page 692 
time but later learned they were Officers Jackson, Jones, May and Harmon. He then recanted his testimony and said he was not sure about Officer Harmon. He denied that others came there later and did not recall seeing the District Attorney in his house on the day he was arrested. Appellant admitted being convicted in Colbert County in December of 1976 for possession of marijuana and receiving a two-year sentence in the penitentiary. He admitted being under a suspended sentence at that time and his probation was revoked. He admitted that later he was convicted for selling cocaine and another case was pending involving another sale. He denied the marijuana found in the house on February 2, 1979, belonged to him and stated he did not know how it got into his house. He denied shooting drugs on the day he was arrested. He heard one of the officers testify that blood was running from his arm but he denied that this was true. He admitted he slept in the house at 227 Lewis Avenue the night before his arrest and no one else was staying there. He stated the utilities were in his name as was the telephone. He did not see the syringe on the bed where he slept and did not know how it got there. In short appellant denied the testimony of the officers that cocaine and other narcotics were found in his house by the arresting officers. He did admit that a set of scales was given to him as paraphernalia but he had never used it to measure any type of narcotics.
Appellant contends the trial court erred to a reversal in failing to suppress the evidence incident to an unlawful arrest and the State's failure to have a search warrant when the officers initially entered appellant's home. What appellant overlooks is that the arresting officers entered his home with a valid arrest warrant and after seeing marijuana in plain view they immediately secured appellant and the premises and went before a magistrate and obtained a search warrant. The action of the officers in this case fully complies with the decision of the Supreme Court of the United States in the cases ofPayton and Riddick v. New York, ___ U.S. ___ , 100 S.Ct. 1371,63 L.Ed.2d 639 (1980).
To hold otherwise would mean closing our eyes to the obvious meaning of the Supreme Court in the Payton and Riddick opinion, supra, and the facts in this case. The officers, armed with a valid arrest warrant, knocked on appellant's front door for at least four minutes and shouted they were police officers and were there to arrest appellant. They shouted so loud and knocked so fiercely that a neighbor came to appellant's house to see what was going on. They were unable to arouse appellant from his drug induced stupor to get him to come to the door in answer to their knock and shouting. Being unsuccessful in getting appellant to respond to their knocks and shouts they simply removed a pane from the back door, reached in and unlocked the door and entered the house. They went directly to the bedroom occupied by appellant and they still had to shake him vigorously for thirty seconds to wake him. Once aroused appellant became aware that he had cocaine on his person and he felt it imperative to rush toward the bathroom to destroy the evidence. An alert officer had to restrain him and the packet of cocaine fell from the person of appellant and was seized by the arresting officer. The officers then called the District Attorney and went before a magistrate to obtain a search warrant. Armed with a search warrant they seized the other contraband located throughout the house.
We hold the trial judge was pre-eminently correct in admitting into evidence all the contraband and paraphernalia confiscated during the search. Brantley v. State, 294 Ala. 344,317 So.2d 345.
Section 15-10-2, Code 1975, provides:
 "An officer may execute a warrant of arrest on any day and at any time; but in doing so, he must inform the defendant of his authority and, if required, must show the warrant. If an officer executing an arrest warrant is refused admittance after notice of his authority and purpose, he may break an outer or inner door or window of a dwelling house in order to make the arrest." *Page 693 
As we have pointed out the arrest warrants had been outstanding for approximately two months before appellant was found and arrested. The law is well settled that there is no constitutional right to be arrested at an early date or at any particular time. United States v. Marion, 404 U.S. 307,92 S.Ct. 455, 30 L.Ed.2d 468; United States v. Lovasco,431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752; Hoffa v. United States,385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374; Chambliss v. State, Ala.Cr.App., 373 So.2d 1185, writ denied, Ala., 373 So.2d 1211.
Notwithstanding the conflicts in the testimony we are not convinced from a careful view of the totality of the circumstances surrounding appellant's arrest that he had not been advised of official authority to make the arrest and of the cause of the arrest. Seals v. State, 282 Ala. 586,213 So.2d 645.
There was no error in allowing Mr. Taylor Noggle to testify as an expert on the effects on the human body from the use of cocaine. Whether a witness is shown to possess the requisite qualifications to be called as an expert is a preliminary question largely within the discretion of the trial courts. The criterion for admission of expert testimony is that the witness, by study, practice, experience or observation as to the particular subject, has acquired a knowledge beyond that of an ordinary witness. Jones v. State, Ala.Cr.App.,339 So.2d 1042; Woods v. State, 54 Ala. App. 591, 310 So.2d 891; Charlesv. State, Ala.Cr.App., 350 So.2d 730.
Conflicting testimony is always a question for the jury to determine. Mullins v. State, Ala.Cr.App., 323 So.2d 109; Lee v.State, Ala.Cr.App., 346 So.2d 31.
The evidence presented was more than sufficient to sustain the verdict of the jury and there was no error in overruling the motion for a new trial. Young v. State, 283 Ala. 676,220 So.2d 843.
We have carefully searched the record and have found no errors affecting the substantial rights of the appellant. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.