LEIGH M. CLARK, Retired Circuit Judge.
A jury found this appellant guilty as charged in an indictment in material part as follows:
“J.W. Rickett, whose name to the Grand Jury is otherwise unknown than as stated, having been convicted of a felony, to-wit: Escape, First Degree, did escape or attempt to escape from custody imposed pursuant to that conviction, to-wit: Restraint or detention by C.M. Garrett, Sheriff of Cherokee County, Alabama, in violation of Section 13A-10-S1 of the Code of Alabama. -...”
It appears from the record that defendant was given due notice of the State’s intention to proceed against him under the Habitual Felony Offenders Act, and, at a duly scheduled sentence hearing, it was shown that he had been previously convicted of three or more felonies. The trial court sentenced him to imprisonment for life, which, according to § 13A-5-9(c)(2), was mandated. There is no contention to the contrary.
I.
In the beginning of the brief of counsel for appellant, the position is taken that the indictment was insufficient to apprise defendant “of the conduct which the indictment referred to” and for that reason defendant “was unable to formulate his defense.” It is argued in the brief that under the language of the indictment, “the State could select, and attempt to make a case of escape out of, any incident in Mr. Rickett’s life, from the time he was incarcerated until the time Sheriff C.M. Garrett left office.” This contention of appellant is not illogical on its face, as it is shown that for a lengthy period before the indictment in the instant case, he had been a prisoner confined to the Cherokee County Jail or in custody of the Alabama Department of Corrections by reason of his convictions for previously committed felonies, including another case of escape in the first degree. The position taken by appellant has all the more semblance of logic by reason of the fact that the felony of escape in the first degree embraces not only a successful escape but also an attempt to escape.
It is argued in the brief of counsel for appellant that the trial court denied the defendant’s motion to dismiss the indictment and that such action on the part of the trial court constituted reversible error. We have difficulty in determining from the transcript or the record proper that there was a ruling by the trial court adverse to defendant on his motion to dismiss the indictment, but we are convinced that between the commencement of the prosecution of the indictment and the entry of defendant’s plea of not guilty, he and his attorney had been fully “informed of the nature and cause of the accusation” as required by the Sixth Amendment to the Constitution of the United States and by Art. I § 6 of the Alabama Constitution. We conclude also that any denial by the trial court of the defendant’s motion to dismiss the indictment did not constitute error prejudicial to defendant.
II.
The second issue presented by appellant is captioned as follows in the brief of counsel for appellant:
“THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT’S REQUEST FOR A COURT INSTRUCTION TO THE JURY TO DISREGARD NONRESPONSIVE COMMENTS MADE BY THE WITNESS TO THE EFFECT THAT DEFENDANT WAS IN THE HABIT OF MAKING JAIL KEYS.”
*1286 The issue is directed at the following part of the testimony of Sheriff C.M. Garrett while testifying on direct examination by an attorney for the State:
“Q. Did you ever give him [defendant] permission to leave the jail in any way?
“A. No sir.
“Q. Did you ever give anybody else permission to allow him to leave the jail?
“A. No sir.
“Q. Do you know how he got out of the jail, Mac?
“A. Well, he was pretty good at making keys. That’s the only way I can figure he got out.
“MR. McWHORTER [Defendant’s attorney]: We are going to object to that, Your Honor, as not being responsive to the question.
“THE COURT: I’ll sustain the objection.
“MR. McWHORTER: We ask that it be stricken from the record.
“THE COURT: Grant the motion.
“MR. McWHORTER: And ask that the jury be instructed to disregard the comments.
“THE COURT: I’ll deny that request.
“Q. Mack, you didn’t actually see him when he left the jail that day, did you?
“A. No sir; I didn’t.
“Q. All right, but he wasn’t there in the jail from September 23rd up till November when he was recaptured, was he?
“A. No sir; he wasn’t.”
From the briefs of the attorneys for the respective parties on appeal, it appears that appellant contends and appellee seems to concede that the party who is not questioning the witness at the time is entitled as a matter of right to the exclusion of the testimony of the witness that is not responsive to questions asked by the opposite party or his attorney. The correct rule is to the contrary, as stated in Woods v. State, 54 Ala.App. 591, 310 So.2d 891, 895 (1975), as follows:
“The rule making exclusion (or striking out) discretionary when the motion comes from the party who did not pose the question which furnished the oecasion for the offending answers is predicated upon the answer being otherwise admissible.
“ ‘... If the evidence given is legal and material and objectionable only because not responsive to the question, only the party who asked the question is entitled to have it excluded. The exclusion of such evidence on motion of the other party would merely prolong the trial by requiring the examining party to propound an appropriate question to elicit the same testimony. ... ’ Ivory v. State, supra, 237 Ala. [344] at 346, 186 So. [460] at 462.”
In our opinion, only the questioner (the attorney for the State) had the absolute right to an instruction from the court that the answer of the witness be excluded on the ground that it was unresponsive unless the answer to the question was otherwise inadmissible. We have no hesitancy in stating that the question, “Do you know how he got out of the jail, Mack?” could have been better stated without thereby calling for a conclusion or opinion of the witness but no such criticism of or objection to the question was made. Furthermore, we are of the opinion that at least one of the rulings of the trial court as to a motion of defendant was the equivalent of a ruling granting the request of defendant’s attorney “that the jury be instructed to disregard the comments.” We doubt not that the jury fully understood by the ruling stating defendant’s belated objection and granting defendant’s motion that the answer of the witness “be stricken from the record” constituted instruction to the jury that it was not to consider the stricken answer. The action of the court now under consideration did not constitute error prejudicial to defendant.
III.
It is next contended in brief of counsel for appellant that “the trial court committed reversible error when it allowed the State to introduce evidence of defendant’s intemperance.” In support of the issue, appellant relies upon Christian v. City of *1287 Tuscaloosa, 53 Ala.App. 81, 297 So.2d 405 (1974). As to the cited case, the following is to be found in the brief of counsel for appellant in the instant case:
“In that case, the defendant was tried and convicted for the offense of possession of burglary tools. As a part of its case, and over the objection of defendant, the City was allowed to introduce evidence of the defendant’s character and bad reputation for drug abuse and addiction. In that case, this Court held that the admission of the evidence of bad character and reputation for drug addiction was improper ...”
Christian v. City of Tuscaloosa is inappo-site to the instant case, in which defendant’s plea of not guilty was based essentially on a defense of duress by which defendant conceded that, without any permission of the sheriff or anyone acting in behalf of the sheriff, the defendant left the jail in which he was imprisoned by reason of the failure of the sheriff or others in charge of the prison to provide the defendant with medication for relief of his severe physical trouble, which specific issue was submitted to the jury for its determination, as shown by the following portion of the court’s oral charge to the jury:
“That brings me to the matter of duress. The defendant has raised as an issue in this case the defense of duress. The law does recognize duress as a defense in certain circumstances. The law says it is a defense to prosecution that the actor— in this case that would refer to the defendant — engaged in the proscribed conduct, in other words, engaged in the unlawful conduct, because he was compelled to do so by the threat of imminent death or serious physical injury to himself or another.
“Ladies and gentlemen, under the circumstances of this case, if you find from the evidence that the defendant, J.W. Rickett, was compelled to escape under threat of imminent death or serious physical injury to himself, then you should acquit the defendant, in other words, you should find him not guilty. The burden of proof with regard to the matter of duress is upon the state. The state must convince you beyond a reasonable doubt and to a moral certainty that the defendant did not act as a result of duress, that instead of his escaping jail by reason of a dire need for medication he, during the time he was an escapee, he participated in the consumption of intoxicating liquor.”
The following is a part of the testimony of a witness who participated in the arrest of defendant during the time he was an escapee:
“Q. Where did that take place?
“A. At a residence located on Mississippi Drive or Mississippi Street in Rome, Georgia.
“Q. What time of the day or night?
“A. Approximately 12:25 A.M.
“Q. And what was Mr. Rickett doing at the time?
“A. At the time we entered the residence Mr. Rickett was sitting up in the bedroom. He was in the bed, and I believe there was one other person in the room with him.
“Q. All right, was — did he have any either food or beverage with him at that time?
“A. Yes sir.
“MR. McWHORTER: I object once again, Your Honor. Irrelevant, immaterial.
“THE COURT: I’ll overrule the objection.
“Q. What, if anything?
“A. Yes sir. There was a mixed drink, appeared to be whiskey and water, that was sitting on the night stand next to the bed.
“Q. Do you know if that was his or not if he had been drinking that.
“A. Yes. The other person in the room was a female, and if I’m not mistaken, she had a drink in her hand also.
“Q. At the time of that arrest did Mr. Rickett have any medication with him or there in that house or place where he was arrested?
“A. No sir.
*1288 “Q. To your knowledge?
“A. No sir, not to my knowledge.
“Q. Did he ask you to allow him to get any medication he might have there to take back with him?
“A. No sir; he did not.”
In our opinion, the evidence complained of was admissible as a part of the State’s effort to show that defendant had not been acting under duress when he escaped. It follows that appellant’s third issue is determined adversely to him.
IV.
The fourth issue presented in the brief of counsel for appellant is thus stated:
“Did the trial court commit reversible error when it allowed the State to introduce evidence concerning defendant’s pri- or conviction?”
As to the issue, appellant’s attorney proceeds to argue that the trial court, over the objection of defendant, “allowed the State to introduce detailed evidence from a prior arrest leading to the conviction of Mr. Rick-ett for an offense not involved in the case at hand.” The argument is concluded as follows:
“The evidence of Mr. Rickett’s health prior to the time he was incarcerated has no relevant bearing on the state of his health produced by the treatment received by Mr. Rickett in jail. For this reason, the trial court erred to the prejudice of Mr. Rickett in allowing the evidence in, and Mr. Rickett’s conviction is due to be reversed.”
By the quoted statements in the brief of counsel for appellant, reference was made to a lengthy occurrence during the direct examination by the State of Mr. Danny Smith, an investigator with the District Attorney’s Office. As there seems to be some misunderstanding on the part of one or both of counsel for the parties on appeal as to what was embraced in such occurrence, we quote it in full, as it appears in the transcript of the proceedings:
“Q. Danny, let me ask you if — to direct your attention back to not this charge of escape against Mr. Rickett, but the other prior escape for which he was serving time at the time of this escape. Who made the arrest on him after that prior escape?
“A. Myself and Deputy Fortenberry from the Sheriff’s Department here and then we were assisted by deputies in Walker County near Jasper.
“MR. McWHORTER: What are we asking about now? Is this the prior offense?
“MR. IGOU: Yes.
“MR. McWHORTER: We’re going to object to all questions and all testimony about the prior offense. It has nothing to do with this case.
“MR. IGOU: You asked about his physical condition and lack of medication. This will pertain to that.
“MR. McWHORTER: All our testimony has been to events that have occurred since that time.
“THE COURT: I think you’d better approach the bench.
“(Bench discussion, outside hearing of jury.)
“THE COURT: What do you expect his testimony to be?
“MR. IGOU: We expect to show that this was on or about April 10th of ’82 when he was rearrested and at that time he made no complaints to Dennis Smith and he had with him no medication and did not request any medication or take any back with him, and second, we expect to go into the arrest of this case which occurred in Rome, Georgia, and at that time he was ingesting alcohol beverage and had no medication with him then.
“MR. McWHORTER: We’re going to object to all that, Your Honor. First of all, with regard to the first offense: It has nothing to do with this, and also Dr. Bradley testified that on May 10th he made the prescriptions, some more prescriptions.
“THE COURT: Dr. Bradley testified that he saw him—
“MR. McWHORTER: In 1980.
*1289 “THE COURT: And again in 1982?
“MR. McWHORTER: Yes sir, and both times he made prescriptions.
“THE COURT: And this occurred in September of ’82?
“MR. McWHORTER: The arrest they’re talking about was in April, prior to the time the doctor prescribed the medication. Whether or not Mr. Rickett was intoxicated or had been taking alcoholic beverages has absolutely nothing to do with whether or not he was denied his medication.
“MR. IGOU: Judge, his whole defense has been his physical wellbeing. We’re entitled to show that he didn’t have any medication with him and he was ingesting alcoholic beverages on an ulcerated stomach.
“MR. McWHORTER: I believe the doctor stated he didn’t have an ulcerated stomach.
“THE COURT: I’m going to overrule the objection.
“MR. McWHORTER: On both—
“THE COURT: Yes sir.
“MR. IGOU: One other thing: I expect to show he was not in a medical facility at either time.
“THE COURT: Overrule the objection.
“Q. Danny, you said something about Walker County authorities assisted you. Where did this arrest take place?
“A. We were at a place that was known as the Hook and Buck Hunting Club. It was located on the Warrior River in Walker County between Jasper and Parrish, I believe.
“Q. Hook and Buck?
“A. Hook and Buck Hunting Club, yes sir.
“Q. What was the date of this?
“A. April 10th, 1982.
“Q. Let me ask you if the Hook and what?
“A. Hook and Buck.
“Q. Hook and Buck Hunting Club. Let me ask you if to your knowledge or if that facility appeared to you to be a medical facility.
“A. No sir; it was not.
“Q. And let me ask you if at the time of the arrest of Mr. Rickett if he had any medication with him.
“A. No sir; he did not.
“Q. Was he brought back by you and the other officers to Cherokee County, Alabama?
“A. Yes sir; he was.
“Q. Did he bring any medicine back with him?
“A. No sir; he did not.
“Q. Did he request that you get any medicine for him?
“A. No sir.
“Q. Let me ask you then about this particular case we’re trying here now, the escape which is alleged to have occurred on September 23rd, 1982, and I believe you testified already as to the date of his arrest after that escape.
“A. Yes sir. I believe it was November 4th, 1982.
“Q. And were you one of the arrestors, one of the people arresting him then?
“A. Yes sir; I was.”
The remainder of the testimony of the witness on direct examination relates exclusively to what occurred in Georgia on the occasion of defendant’s arrest for the alleged escape upon which this appeal is based and has already been quoted in this opinion in our discussion of Issue III.
Taking into consideration all that the transcript shows on the point, we conclude that, irrespective of what counsel for the State intended to offer in evidence, no evidence was introduced as to defendant’s health, medication or diet, or to his partaking of strong drink or the like, prior to the alleged escape forming the basis for the judgment of conviction from which the instant appeal was taken. We find no error prejudicial to defendant in any ruling of the court made the basis of appellant’s Issue IV.
*1290 V.
Appellant’s final issue is thus captioned in the brief of counsel for appellant: “THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO GRANT DEFENDANT’S MOTION FOR JUDGMENT OF ACQUITTAL, AND DEFENDANT’S MOTION FOR A NEW TRIAL, BASED ON THE STATE’S FAILURE TO PROVE PRIMA FACIE CASE.”
There was no eyewitness testimony to the alleged escape, but the undisputed evidence shows that defendant did escape “from custody imposed pursuant to a previous conviction” and the only issue of fact as to his guilt was encompassed in the defense of duress. We find no merit in appellant’s final contention.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article; his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.